PEOPLE ex rel. CORNELIUS v. CALLAN et al.

(Supreme Court, Special Term, Allegany County. October, 1910.)

1. ADOPTION (§ 12*)—ABANDONMENT OF CHILD BY FATHER—EVIDENCE.

Relator left his wife January 27, 1910, telling her that he would not live with her again, and on that day delivered to his father all his property, directing the father to sell the same and use it for his wife's support. From then until July following he sent $40 to his father for his wife's use. The wife remained in the house formerly occupied by herself and husband until about April 1st, during which she was furnished supplies and necessaries by relator's father, being advised that she was being supported by her husband. After April 1st she went to live with her husband's father, and was supported out of her husband's funds. On May 7th she gave birth to a son, the expenses incident thereto being paid by relator, and on May 28th she left the home of relator's father and went to defendants with the young child, and in July an order was granted by the county judge confirming an adoption of the child by defendants on an application reciting that relator had abandoned the child, without his consent or notice to him, though defendants knew his whereabouts. *Held,* that relator had not abandoned his child, and that the adoption proceedings were invalid as to him.

[Ed. Note.—For other cases, see Adoption, Dec. Dig. § 12.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. HABEAS CORPUS (§ 99*)—CUSTODY OF CHILDREN.

Where a child was adopted by defendants under an order of the county judge, without notice to relator, its father, on the false representation that relator had abandoned it, the Supreme Court, in habeas corpus proceedings, was entitled to regard the order of adoption as a nullity, without its having been first set aside by the county judge, notwithstanding Code Civ. Proc. § 2032, providing that a person whose detention is considered on habeas corpus must be remanded, if it appears that he is retained in custody by the final order of a competent tribunal made in a special proceeding.

[Ed. Note.—For other cases, see Habeas Corpus, Dec. Dig. § 99.*]

Habeas corpus by the People, on the relation of Alvin G. Cornelius, against Gardner Callan and another, to obtain possession of relator's infant child. Writ granted.

Jesse S. Phillips, for plaintiff.
Harry L. Allen, for defendants.

BROWN, J. On January 27, 1910, Alvin G. Cornelius, after a quarrel with his wife, Hattie Cornelius, left her, stating that he was going away and would not live with her again. On that day Alvin G. Cornelius delivered to his father, Elmer Cornelius, substantially all of his property, consisting of one pair of horses, 7½ tons of hay, 100 bushels of potatoes, and a quantity of farming implements, directing his father to sell such property and use the avails thereof for the support and maintenance of his wife Hattie. On that day Alvin G. Cornelius left his home in Ward, Allegany county, N. Y., went to Akron, Ohio, obtained employment in a rubber factory, where he remained until July 4, 1910. During his stay in Akron Alvin frequently corresponded with his father, and forwarded money to the extent of $40 for the father's use in supporting the wife, Hattie. From January 27, 1910, to about April 1, 1910, the wife, Hattie, remained at the house formerly occupied by herself and husband, during which time she had her support and maintenance from the supplies left in the house by her husband and additional necessaries furnished by Elmer Cornelius; she being advised that she was being supported by Alvin Cornelius, her husband. About the 1st of April Elmer Cornelius took his daughter-in-law into his own home, where she lived as a member of the family until the 28th day of May, 1910; her support and maintenance being furnished from the property of her husband, Alvin Cornelius. On the 7th day of May, 1910, the boy, Maurice Cornelius, was born to the wife, Hattie; the attending physician being paid for his services from funds furnished by the relator, Alvin Cornelius.

On the 28th day of May, 1910, Hattie Cornelius left the home of Elmer Cornelius and went to the home of the defendants, her uncle and aunt, taking with her her two year old child and the baby, Maurice. On July 1, 1910, the defendants, Hattie Cornelius, and the baby, Maurice, went before the county judge of Allegany county, and the defendants and Hattie Cornelius executed an agreement and consent for the adoption of the baby, Maurice, by the defendants, under the domestic relations law (Consol. Laws, c. 14), stating in the agreement that the father, Alvin Cornelius, had abandoned the child, thus dispensing with

the necessity of furnishing the consent of the relator to such adoption, filing with the county judge an affidavit of Hattie Cornelius, in which she stated that the relator left her on the 27th of January, 1910, saying that he was going away; that he' was going to leave her and her children, and would never come back, and since said time she had not'heard a word from him. Thereupon the county judge made a final order allowing and confirming the adoption of the infant, Maurice, by the "defendants. At the time of the execution of the agreement and consent for such adoption, the defendants well knew that the relator was at Akron, Ohio, and had the means of communicating with him; they having a son and daughter living at Akron, with whom they frequently .corresponded, and who were friends and companions of the relator.

On July 7, 1910, the relator returned to his home in Allegany county, and shortly thereafter learned that his son, Maurice, had been adopted by the defendants with the consent of his wife, Hattie; that he had not been consulted as to such adoption for the alleged reason · that he had abandoned the child. The relator demanded the possession of the child from the defendants, which was refused, whereupon the relator sued out writ of habeas corpus; the defendants making return to such writ that they retain custody of the child under and by virtue of the fact that the relator had abandoned the child, Maurice, and that such order of adoption is valid and of full force and effect, "and that the relator is an improper person to have the custody of the child. The relator puts in issue the matters set forth in the return by a reply.

From a careful consideration of the evidence, it very satisfactorily appears that the relator did not abandon his wife on the 27th day of January, 1910, and that the child, Maurice, had not been abandoned by the relator on the 1st day of July, 1910, the date of the adoption order, and that the relator is a fit and proper person to have the care and custody of his son.

The defendants contend that the order confirming their adoption of this three months old baby is conclusive upon this court and must remain in full force, determining their rights to the custody of the child until abrogated or canceled by an order of the county judge; that, the county judge having granted the order, its full force cannot be interfered with in this proceeding, no matter how false and untrue the statements relative to the abandonment of the child by its father may be; and they invoke the benefit of section 2032 of the Code of Civil Procedure, providing that the person must be remanded when it appears that he is retained in custody by the final order of a competent tribunal made in a special proceeding.

Such a contention would result in the relator being utterly unable to secure the custody of his son through any statutory proceedings. The domestic relations law only provides for the abrogation of an order of adoption in three cases: First, voluntary application to county judge by interested persons, and abrogation is then only provided for when county judge is satisfied that abrogation is desired by all persons concerned; second, upon the application of the child, when the child has been adopted from an institution and upon the ground of cruelty, etc.; and, third, upon the application of the foster parents, when the child

has been adopted from an institution, and upon the ground of desertion, etc., by the child, none of which proceedings could be instituted by this father.

But, say the defendants, the county judge has inherent power to vacate his order upon proof that the jurisdictional fact of abandonment was misstated in the adoption proceedings. So has the Supreme Court inherent power to brush aside any instrumentality that interferes with the proper custody of children, especially when it is charged with the duty of protecting their interests. While it may be true that this court could not abrogate, cancel, or destroy the order of adoption, yet it can decree that such order of adoption is ineffectual to prevent this court from disposing of the custody of this infant as its best interests may appear. While it is true that the father was not a party to the proceedings that resulted in the order, that he has not had his day in court, that the necessity of his appearance and his right to object to such adoption was denied him through false statements as to his alleged abandonment, and it may be that before the rights of the father can be fully restored to him permanently, some proceeding must be instituted before the county judge seeking a cancellation of the order of adoption, yet where the welfare of the child is the chief object to be attained, and is the guide for the judgment of this court in these proceedings, such order of adoption, so obtained by false statements as to the relator's abandonment, cannot be urged as an effective objection to the awarding of the custody of this child to its father, when it appears that such custody will be for the best interests of the child.

In view of all the facts and circumstances, no other satisfactory conclusion can be reached than that of awarding to the relator the care and custody of his five months old son, Maurice Alvin Cornelius.

Findings may be prepared in accordance with this memorandum, granting the relator $50 costs.