THE PEOPLE OF THE STATE OF NEW YORK ex rel. ELSA LENTINO, Respondent, *v.* CHARLES G. FESER and AIDA FESER, Appellants.

First Department, February 4, 1921.

Parent and child — habeas corpus proceeding by mother to secure possession of infant daughter dismissed — abandonment of child — validity of voluntary adoption procured without actual or constructive notice to parent — necessity for hearing on issue of abandonment.

A habeas corpus proceeding by a mother to obtain the possession of her infant daughter should be dismissed and a voluntary adoption order procured without actual or constructive notice to the relator should be sustained, where it appears that the relator voluntarily delivered her daughter to the respondents on the understanding and agreement, evidenced by a letter signed by her at a time when she was unable to properly care for the child, that they were to have the custody of the child and the right

to bring her up as their own; that thereafter the relator abandoned the child to the respondents, husband and wife, who are respectable people with sufficient financial ability to properly care for the child; and that the child's stepfather is a professional gambler now in a State prison and liable to be taken into custody on another charge at the expiration of his sentence.

A parent who has not been heard on the issue of abandonment cannot be concluded by an *ex parte* determination and must be afforded a hearing thereon, either by direct application to the judge who made the order of adoption or, as in this case, in a habeas corpus proceeding.

APPEAL by the defendants, Charles G. Feser and another, from an order of the Supreme Court, made at the Bronx Special Term and entered in the office of the clerk of the county of Bronx on the 12th day of June, 1920, sustaining a writ of habeas corpus and awarding the custody of Louise Phillips, otherwise known as Marie Feser, who is five years of age, to the relator, and declaring null and void an order of the Surrogate's Court of Bronx county permitting the respondents to adopt said child and to have her care and custody.

*George M. Curtis, Jr.,* of counsel [*Curtis, Robson & Collins,* attorneys], for the appellants.

*John T. S. Wade* of counsel [*Leonard McGee,* attorney], for the respondent.

LAUGHLIN, J.:

The points presented by the appeal concern the right to the custody of the child as between the mother, who is the relator, and the respondents to whom she voluntarily delivered the child on the understanding and agreement, evidenced by a letter signed by her at a time when she was unable properly to care for the child, that they were to have the custody of the child and the right to bring her up as their own, the validity and effect of an order of adoption subsequently procured by them without actual or constructive notice to the mother, and whether it is for the best interests of the child to be left with the respondents to be brought up as theirs or to be returned to her mother.

The relator married one Phillips on January 18, 1913. Two children were born the issue of that marriage, one, Herbert, on the 3d day of December, 1913, and Louise, with whom we are

concerned in this proceeding, on the 1st of July, 1915. Their father died on the 3d of August, 1915. On the 27th of February, 1918, their mother married one Lentino, a gambler by profession, who on the 12th of August, 1919, was duly convicted in the Court of General Sessions, New York county, of the crime of having received stolen goods knowing them to have been stolen, for which he was sentenced to be imprisoned in a State prison for not less than one year and six months, nor more than three years, and when the order herein was made he was still serving his sentence. A bench warrant has been issued for his arrest under an indictment for grand larceny, under which he will probably be taken into custody at the expiration of his present sentence. If not, or when he obtains his liberty, the relator contemplates resuming marital relations with him and bringing up her two children by the former marriage and another, a girl born on the 7th of April, 1919, the issue of her marriage with him, under his supervision and as members of his family. It appears that Louise for a period of about six weeks after her birth, during which time the relator was ill, was in the custody of the relator's mother. From June to September, 1918, Louise, with the consent of her mother, was in the care of Mr. and Mrs. Burbank of Brooklyn. Mrs. Burbank died on the 26th of September, 1918, and Louise was then returned to her mother and was afterwards under the care of a Miss Halbach, also known as Von Halbach, for a short time and was then, through the instrumentality of Miss Halbach, also known as Von Halbach, sent by the relator, who had become ill again, to the respondents on the 2d day of October, 1918, with whom and under whose care she has ever since remained at their apartment, No. 1326 Fulton avenue, in the borough of The Bronx. When the relator sent the child to the respondents there had been no interview between her and them and only indirect negotiations through Miss Halbach, also known as Von Halbach, from which the fair inference to be drawn from the evidence is that the respondents were led to believe that the relator was unable to provide a proper home for the child and that they would be permitted to bring her up as their own. About a week after the respondents received the child, one of them called on the relator, evidently with a view to obtaining her consent to the adoption of the child, but

she was unwilling to give it. On the 26th of November, 1918, relator called at the respondents' apartment and dined with them and remained some hours thereafter and as the result of negotiations between them and her, Mr. Feser wrote on a typewriter a statement which the relator there signed, as follows:

" NEW YORK, *November* 26, 1918.

" I hereby consent to allow my daughter, Louise, to live with, and be brought up by Mr. and Mrs. Charles G. Feser, 1326 Fulton Avenue, Bronx, N. Y., as I do not love or care for her. " (Signed) MRS. ELSA LENTINO."

Respondents and the mother of Mrs. Feser thereupon signed the paper as witnesses. The relator concedes that she signed this paper but she testified that, while there, she was given intoxicating drinks and was not in a state of mind fully to comprehend and understand it. That is controverted by the testimony of the respondents, which is also to the effect that they never had or served intoxicating drinks, and they are corroborated by other testimony. All of the testimony introduced on the hearing has been fully considered and we deem it sufficient to state our conclusion with respect thereto without setting it forth or discussing it in detail. It satisfactorily appears that the relator gave the respondents to understand that she was unable to provide for the child and was quite willing and desirous that they should retain the custody of the child and bring her up as their own, and that she voluntarily signed the paper with full knowledge of its contents after she had so agreed with them verbally. It does not appear that anything was then said with respect to their right formally to adopt the child; but the respondent Feser, who drew it, was a salesman of steel supplies and doubtless did not know the formal requirements of the law. After that interview, the preponderance of the evidence shows that the relator abandoned the child to the respondents and never called to see the child or personally made any effort to see her. The relator claims to have called on the respondents thereafter and to have had telephonic conversations with them concerning the child, but that is controverted by them. It was understood at the time the paper was executed that

First Department, February, 1921.          [Vol. 195.

the relator was to be at liberty personally to call and see the child if she should so desire. The relator's brother at one time thereafter called on the respondents and expressed a desire to see the child but was not permitted so to do, and the respondent Feser wrote relator protesting against this as a violation of their understanding that only she was to see the child. After the paper was executed, the relator frequently changed her residence and resided alone with her child and children after the last child was born, and later on her brother lived with her. She had no means and earned nothing but dressed well and she and the children who were with her were supported solely by contributions from her brother and brothers-in-law. The relator stated in her traverse to the return that she had been informed by her husband that he had inherited from his father about $30,000, which he expected to receive when released from prison in July, 1920, but on the hearing that was not shown.

On the 25th of June, 1919, respondents presented to the Surrogate's Court, Bronx county, a petition setting forth the time and circumstances under which they received the custody of the child; the signing of the paper under the date of November 26, 1918, by the relator and the circumstances under which she signed it; efforts made by them to ascertain the address of the relator; that the father of the child was dead; that the mother had abandoned her; their ability and willingness to provide for her and give her a home and proper care and attention as if she were their own, and praying that the child's name be changed to theirs and for an order of adoption. Respondents, with the child, appeared before the surrogate, and the court made an order reciting the material facts and that the consent and appearance of the mother were unnecessary because she had abandoned the child, and allowing the adoption of the child by the respondents by a formal adoption signed and proved to have been executed by them and recited in the order. It satisfactorily appeared on the hearing that the respondents are husband and wife and have been during all the times in question; that they are respectable people and have sufficient financial ability properly to care for her and were willing and anxious so to do; that they are fond of the child and the child is fond of

them and addresses the respondent Mrs. Feser as her mother and manifested affection for both respondents and did not recognize or remember the relator and would not go to her.

This proceeding was instituted by a petition verified by the relator on the 15th of March, 1920, in which she states that she first learned of the order of adoption on the 23d day of September, 1919, and that she had no notice of the application therefor. Section 111 of the Domestic Relations Law (as amd. by Laws of 1913, chap. 569, and Laws of 1915, chap. 352), so far as here material, requires the consent of a parent or surviving parent to the adoption, but expressly provides that the consent of a parent " who has abandoned the child " is unnecesary. Section 110 (as amd. by Laws of 1917, chap. 149)* defines adoption as " the legal act whereby an adult takes a minor into the relation of child and thereby acquires the rights and incurs the responsibilities of parent in respect to such minor," and provides, among other things, that an adult husband and his adult wife together may adopt a minor, pursuant to the provisions of the adoption article of the Domestic Relations Law, being article 7 thereof. The statute provides procedure for two kinds of adoption, namely, one for the adoption of indigent children from charitable institutions (Dom. Rel. Law, §§ 110, 115, as amd. by Laws of 1917, chap. 149, and Laws of 1918, chap. 280), and another for all other cases which are known as voluntary adoptions (Id. §§ 110, 112, as amd. by Laws of 1917, chap. 149, and Laws of 1916, chap. 453). The proceedings in the case of a voluntary adoption, with which only we are concerned, are regulated by section 112 of the Domestic Relations Law, which provides, if the child is under eighteen years of age, that the foster parent or parents, defined in section 110 as the person or persons who are to adopt, the person to be adopted, and all persons whose consent is necessary under section 111, must appear before the county judge or the surrogate and be examined unless an instrument " containing substantially the consents " required is presented and an agreement on the part of the foster parents for the adoption, signed by, among others, each person whose consent is required by section 111, duly acknowledged.

---

* Since amd. by Laws of 1920, chap. 433.— [REP.

First Department, February, 1921.          [Vol. 195.

If, therefore, the paper signed by the relator on the 26th of November, 1918, could be deemed substantially the consent required by the statute, it is manifest that the adoption order could not be sustained on that theory for it was not executed in the manner required by the statute. It thus appears that the statute authorizes an adoption without consent of the surviving parent, if such surviving parent has abandoned the minor child. The statute contains no express provisions requiring notice to the parent in order that he may be heard on the question of whether or not he has abandoned the child, but, manifestly, without such notice, either actual or constructive, an adjudication cannot be made that will be binding on the parent on that issue. (*Matter of Livingston,* 151 App. Div. 1; *People ex rel. Simpson Co.* v. *Kempner,* 154 id. 674; *Stuart* v. *Palmer,* 74 N. Y. 183; *Modern Loan Co.* v. *Police Court,* 12 Cal. App. 582; *Matter of Johnston,* '76 Misc. Rep. 374.) In many instances it would be impracticable, if not impossible, to give notice of a hearing on such an adoption proceeding to a parent who has abandoned a child, for often the parents are unknown and their whereabouts is unknown, and since the duty devolves on the State to care for such children, it was competent for the Legislature to provide for their adoption without the consent of or notice to the parent, at least when such notice could not be given, on satisfactory proof of the facts which the Legislature deems sufficient. All the facts on which the Legislature dispensed with consent, except abandonment, are matters of record, which could not well be controverted, namely, that the parent had been deprived of his civil rights or divorced for adultery or cruelty, or adjudged insane or to be an habitual drunkard or duly adjudged to be deprived of the custody on account of cruelty or neglect. But a parent who has not been heard on the issue of such abandonment, which might have been controverted, cannot be concluded by the *ex parte* determination and must be afforded a hearing thereon, either by direct application to the judge who made the order, or as here, in a habeas corpus proceeding. (*Matter of Livingston, supra; Matter of Moore,* 72 Misc. Rep. 644; *Matter of Larson,* 31 Hun, 539; revd., on another point, 96 N. Y. 381; *People ex rel. Cornelius* v. *Callan,* 69 Misc. Rep. 187; *Matter of Antonopulos,*

171 App. Div. 659.) In *United States Trust Co.* v. *Hoy* (150 App. Div. 621), with respect to adoption from an institution, it was held that the adoption order was valid and binding on the parent, who, however, in that case was deemed represented by the institution which had notice and the adoption was as authorized in such cases and was not on the ground of abandonment by the parent. It is unnecessary to decide whether the relator's only remedy was an application to vacate the order of adoption — a point on which the views of the members of the court are not in accord — for all of the evidence has been taken and we are all of opinion thereon that the relator had abandoned the child prior to the making of the adoption order, and that being the fact, the adoption order should have been sustained and the proceeding dismissed. The delivery of the child to the relator pursuant to the order was stayed pending the appeal and the child is now in the custody of the respondents, where we think she properly belongs.

It follows that the order should be reversed, but without costs, and the proceeding dismissed, without costs.

CLARKE, P. J., SMITH, PAGE and MERRELL, JJ., concur.

Order reversed, without costs and proceeding dismissed, without costs.