## Kelly's Adoption.

*Parent and child—Adoption—Child of divorced parents—Notice to father— Failure of father to support—Act of May 28, 1915, P. L. 580.*

1. Where a petition is filed to adopt the child of divorced parents and the mother consents, notice of the petition should be given to the father, although the petition and *ex parte* affidavits aver that the father had neglected or refused to provide for the child for the period of one year prior to the filing of the petition.

2. In such case, an adoption decree should not be awarded without a judicial determination, after due hearing, upon the question whether the father had, by refusal or neglect to provide for his child, lost his right to withhold consent to an adoption.

3. If an adoption decree has been entered without notice to the father, it will be opened on his petition to permit him to show that he has not lost his right to withhold his consent to the adoption.

Rule to revoke adoption. C. P. Lackawanna Co., May T., 1923, No. 319.

*J. J. Owens* and *W. B. Landis,* for rule.

*Knapp, O'Malley, Hill & Harris,* contra.

MAXEY, J. — This proceeding is had upon the petition of Edward Kelly, father of Anna Henrietta Kelly, to revoke the decree of court made March 31, 1923, for the adoption of said child by Fred Miller and Catherine Miller.

*The pleadings.*

March 31, 1923, Fred Miller and Catherine Miller presented to court a petition, setting forth that they were residents of this county, husband and wife, citizens and owners of property; that Anna Henrietta Kelly was born Jan. 24, 1918, the daughter of Edward Kelly and Frieda Kelly; that the father of said minor had never supported her; that by proceedings in this court said Frieda Kelly secured a divorce from Edward Kelly on the charge of cruel and barbarous treatment on Feb. 13, 1919; that said Edward Kelly had never contributed anything toward the support of said minor, and that said minor had been brought up practically since its birth in the home of the petitioners; that since being divorced, said Frieda Kelly had married Louis Sherman; that the petitioners desired to adopt said child; that the mother consented to said adoption, the same being evidenced by her writing joining in said petition; that the petitioners had no children of their own and were able to provide a proper home for said minor and care for, support and maintain her in a manner conducive to her welfare. The petitioners prayed for leave to adopt said minor, and that she be entitled to all the rights and subject to all the duties of a lawful child of said petitioners. The petition was accompanied by the affidavit of two citizens, setting forth that the petitioners were persons able properly to care for the child and that the adoption would be for the child's best interests. The court thereupon, to wit, on March 31, 1923, made a decree that the said minor be deemed and taken in law to be a child and heir of the petitioners, assume their name and be thereafter known and called by the name of Anna Henrietta Miller, and thenceforth have all the rights and be subject to all the conditions of a child and heir of said petitioners, and that the petitioners be deemed and taken in law to be the parents of said minor and have all the rights and be subject to all the duties of parents as fully and to the same extent as if said minor had been born the lawful child of said petitioners, all in accordance with the provisions of the act of assembly in such case made and provided.

Oct. 11, 1923, Edward Kelly, father of said minor, presented his petition, setting forth that he was a resident of this county; that he had never been notified of the petition for adoption until after the decree of adoption had been handed down; that he was not served with the petition, although he had always resided in the City of Scranton; that the petition for leave to adopt was never advertised; that he never consented to the adoption of his daughter; that the averments of the petition for adoption were false, in so far as it was indicated that said Edward Kelly had never contributed, or offered to contribute, to the support of said minor; that he is amply able and willing to support his said daughter and to provide a comfortable home for her, and, therefore, wishes to be granted custody and to retain his rights as a parent of said minor. Upon said petition the court granted a rule to show cause why the decree of adoption should not be revoked.

Fred Miller and Catherine Miller, the petitioners for adoption, filed an answer, *inter alia*, admitting that Edward Kelly was never notified of the petition for adoption and was not served with the petition, and that said petition for adoption was never advertised, but stating that said facts were irrelevant and immaterial. The answer further admitted that said Edward Kelly had never consented to the adoption, and set forth that the averment of his petition to that effect was irrelevant and immaterial, for the reason that he was at the time of the proceedings for adoption, and had been for several years theretofore, a non-supporting parent of said minor. The answer further averred that said Edward Kelly was not able or willing to support his

daughter, had never been able or willing to provide a comfortable home for her, had never taken any interest in her, and had never contributed, or offered to contribute, to her support.

### The evidence.

At the hearing held upon the rule, Edward Kelly, the child's father, testified that he had never consented to the adoption, was never notified of the proceedings therefor, and had his first notice thereof after the adoption had been decreed. He testified that he contributed to his daughter's support through Attorney Robert Scragg, "until it was stopped;" that he had made four payments of $5 each, of which two were returned; and he offered in evidence two letters written by Mr. Scragg to T. J. Jennings, Esq., as follows:

"October 29, 1921.

"T. J. Jennings, Esq., . . .

"Dear Sir: In the case of Commonwealth v. Sheridan (Kelly was known sometimes by his stepfather's name), this is to notify you that Mrs. Sheridan's mother has notified me that she does not wish her daughter to accept any further assistance from Mr. Sheridan towards the support of herself or child. In case of any dispute about this matter, this letter can be used by you to remind you of the fact stated to me by Mrs. Sheridan's mother. Yours truly, Robert E. Scragg."

"November 4, 1921.

"Thomas J. Jennings, . . .

"Dear Sir: In reference to the case of Commonwealth v. Sheridan, I wish to notify you that Mrs. Sheridan refused to accept the last money that Mr. Sheridan left with me for her and directed me to notify you for Mr. Sheridan that she did not desire any further assistance from him. Yours very truly, Robert E. Scragg."

Mr. Kelly testified that he was earning $150 a month and was living with his brother and his brother's wife; intended to have the child live with him at his present residence; was able to care for the child; and denied the statements made in the petition for adoption, that he had not contributed and had refused to contribute to the support of his child. On cross-examination, he testified that after the divorce he offered to support the child and denied that it was necessary to threaten him with non-support action before he paid any support money. When asked whether he had since the divorce offered to support or pay any money for the support of the child, he testified that he "was told not to come near the house one month after I married the girl." When asked as to his visits to the child in the past six years, he testified: "I have met the wife occasionally up until a year ago last Christmas . . . and I would see the child with her."

Mrs. Gertrude Sheridan, sister-in-law of Edward Kelly, testified that she desired to have the child live with Kelly at her home. Mrs. Thomas Sheridan, mother of Kelly, testified that conditions in the home where he desires to place the child are pleasant and comfortable; that he is able and willing to support the child. She testified, further, that the child had been with the mother ever since it was born.

Counsel agreed that if Robert E. Scragg, an attorney, were called as a witness he would testify that he represented the child's mother; that after the divorce proceedings, on four occasions, Edward Kelly gave him $5 for the child's support, and that the great-aunt (Mrs. Miller, one of the adopters) and the mother refused the money in the last two payments.

### Kelly's Adoption.

Mrs. Frieda Sherman (formerly Kelly), mother of the child, testified that the child is six years of age, and was nine months old when the mother left the father; that the witness's aunt (Mrs. Miller) "bought most of the child's things at birth, that is, the underwear and expensive things. He (the father) bought a few things, the outing flannel and such things to clothe the child underneath; but the expensive things my aunt bought and my uncle (Mr. Miller, the other adopter);" that while the witness was living with the child's father he bought for the child "one pair of shoes and about five yards of long-cloth to make a dress, and about ten yards of outing flannel, that's all." The witness testified that after she left her husband she "went to live with my aunt and uncle (the petitioners for adoption) that I always made my home with; my aunt and uncle raised me," from the age of seven years. She testified that the first time she left her husband the child was just six weeks old; "he come and took the store book off me and told me to get out with the child." She testified that the father never asked to visit the child; that the child doesn't know him as her father; that Mr. Miller, one of the petitioners for adoption, "asked me to adopt the child long before I married Mr. Sherman, because . . . he has brought up the child and raised the child; she loves him as a father." On cross-examination, the witness testified that Mr. Kelly would never ask for the child; he wanted me to go out with him; but he never asked me to bring the child; . . . he saw the child on the street different times;" that her aunt (Mrs. Miller) never told Kelly that he should not come to the house where his wife was living.

Mrs. Catherine Miller, one of the petitioners for adoption, testified that her husband is employed as a foreman in the Erie shops, and has been for about twelve years; that she and her husband own their own home and have personal property in addition; that she has no children of her own; that Mrs. Sherman (the child's mother) was her niece, grew up in her home and was "raised" by herself and her husband; and that the minor child of Edward Kelly has lived with the witness practically all of her life; that the child does not know her father. She testified that she had not ordered the father to stay away from her house a week after his marriage.

Edward Kelly was recalled and testified that a week after his marriage Mrs. Miller told him "to clear out of" her house; and that he did not feel at liberty to go to Mrs. Miller's house to see his child; that he had made arrangements to see the child with the mother; that the mother wouldn't let him come to her house to see the child "because I was ordered away and she thought it would only make trouble."

Counsel for the petitioners for adoption offered in evidence the record of the divorce proceedings. This record shows that Edward Kelly had personal service of the various papers in the divorce proceedings. The grounds laid in the libel were cruel and barbarous treatment endangering the wife's life and indignities to her person, rendering her condition intolerable and life burdensome, thereby forcing her to withdraw from her husband's house and family. The divorce was not contested.

### The statutes as to adoption.

Proceedings for adoption are had under section 7 of the Act of May 4, 1855, P. L. 430, and its amendments, as follows: Act of May 19, 1887, P. L. 125; Act of April 22, 1905, P. L. 297; Act of May 28, 1915, P. L. 580. As last amended, the act reads: "Section 7. That it shall be lawful for any person desirous of adopting any child as his or her heir . . . to present his or her petition to such court in the county where he or she may be a resident, declaring such desire, and that he or she will perform all the duties of a parent to

such child; and such court, if satisfied that the welfare of such child will be promoted by such adoption, may, with the consent of the parents, or surviving parent, of such child; or, if the father or mother from drunkenness, profligacy or other cause shall have neglected or refused to provide for his or her child or children for the period of one year or upwards, proven to the court, with the consent of the non-neglecting father or mother alone; . . . decree that such child shall assume the name of the adopting parent and be subject to the duties of such child. . . ."

### *The question involved.*

The validity of the adoption in this case depends upon the question whether "the father . . . shall have neglected or refused to provide for his . . . child . . . for the period of one year or upwards, proven to the court, . . ." prior to the petition for adoption.

### *Discussion.*

The petition for adoption duly averred that the child's father, "the said Edward Kelly, has never contributed anything towards the support of said minor, and that the said minor has been brought up practically since its birth in the home of your petitioners," contained the other averments necessary to support a decree of adoption, and was verified by affidavit of the petitioners and joined in by the "non-neglecting mother." In addition, the petition was accompanied by the affidavits of two responsible persons, setting forth that the petitioners were able properly to care for and support said minor and that the adoption prayed for would be to the best interests of the minor. The papers presented, *prima facie,* sufficient facts for the court to make the decree entered. However, we feel that it would be better practice to support a petition for adoption which contains the grave averment that a parent has "from drunkenness, profligacy or other cause . . . neglected or refused to provide for his . . . child . . . for the period of one year or upwards" by more than the *ex parte* affidavits of the petitioners for adoption. Property rights of great value, and the life-course of a human being, are involved in adoption proceedings, and such proceedings should be surrounded by every precaution.

There is no requirement in the statutes or in the rules of court on this subject for notice to the alleged neglecting parent; but in a matter of such importance it is proper that notice be given. It is alleged and admitted that no notice was given to Edward Kelly, the father. He was a resident of this county and his address was known to the child's mother, for she secured personal service upon him of the papers in divorce. The answer to the petition to set aside the adoption sets forth that the averments of non-notice to and non-consent by Edward Kelly are irrelevant and immaterial, for the reason that he was at the time of the proceedings for adoption a non-supporting parent. At first sight, it would appear that no notice need be given to the parent who had "neglected or refused to provide for his or her child . . . for the period of one year or upwards, proven to the court, . . ." inasmuch as this wording of the statute is followed by the provision that "with the consent of the non-neglecting father or mother alone, . . . such court, if satisfied that the welfare of such child will be promoted by such adoption, may . . . decree that such child shall assume the name of the adopting parent and be subject to the duties of such child." But even a parent so indifferent to a child's welfare as to "have neglected or refused to provide for the child . . . for the period of one year or upwards . . ." should be given notice of a proceeding which contemplates a change of the child's name and custody and almost a change in the child's identity. It has been held that the putative father of an illegiti-

mate child is entitled to notice of proceedings for its adoption under the Act of May 19, 1887, P. L. 125: Swartwood's Adoption, 19¹ Dist. R. 819. "The act contemplates a proceeding in court after all parties interested have had due notice:" Keeler's Adoption, 52 Pa. Superior Ct. 516, 522. In Letchock's Adoption, 1 D. & C. 223, where the mother had executed a paper reading "[I] do hereby relinquish all my right to the said child, and do hereby commit said child to the care and custody of the Children's Home Society of Pennsylvania, and do hereby consent that the said child may be legally adopted by such person or persons as may be chosen by the said Children's Home Society of Pennsylvania without any further notice to the undersigned, . . ." the court held that the mother could not, by waiving notice of adoption, waive the jurisdictional requirement of the act of assembly, and that "to give the court jurisdiction to so adjudicate the rights of the natural parent, he must be in court, either actually or constructively, by having appeared voluntarily or had notice served upon him." 24 Am. Law Reps. 422: "The abandonment of a child by its parents must be clearly proven and shown to exist as a fact before the child can properly be adopted without their consent. Hence, while abandonment of a child may be sufficient ground for an adoption without parental consent, such abandonment must be judicially adjudged, and notice to the parent of the adoption proceeding is essential to cut off his rights: Sullivan *v.* People, 224 Ill. 468, 79 N. E. Repr. 695; Re Humphrey, 137 Mass. 84; People ex rel. Cornelius *v.* Callan, 124 N. Y. Supp. 1074," and other cases there cited. People ex rel. Lentino *v.* Feser, 195 App. Div. 90; s. c., 186 N. Y. Supp. 443: "The statute authorizes an adoption without consent of the surviving parent, if such surviving parent has abandoned the minor child. The statute contains no express provisions requiring notice to the parent in order that he may be heard on the question of whether or not he has abandoned the child, but manifestly, without such notice, either actual or constructive, an adjudication cannot be made that will be binding on the parent on that issue." Sullivan *v.* People, 224 Ill. 468; s. c., 79 N. E. Repr. 695: "A court cannot be clothed with authority to decree that a parent has deserted his child and forfeited his parental rights without notice to him. . . . Whether the statute requires notice to a parent within the state, who is charged with having deserted his child, or not, there can be no valid adjudication depriving him of his parental rights without notice."

There is some merit in the contention of the petitioners for adoption that the father's neglect or refusal to provide for his child for the period of one year or upwards justified the failure to serve notice upon him of the proceedings for adoption; and we do not doubt that the petitioners acted in good faith in presenting their adoption petition without such notice, for the petition set forth the name of the child's father and averred that he was a nonsupporting parent. However, we think it cannot be questioned that no adoption decree should be awarded in such a case without a judicial determination, after due hearing, upon the question whether a parent has by neglect or refusal to provide for a child lost his right to withhold consent to an adoption.

The rule to show cause why the decree of adoption should not be set aside reopened the proceedings. A full hearing was had upon the issued raised by the petition to set aside the adoption and the answer thereto. Edward Kelly, the father, maintained that the adoption petition was false in its averment that he had never contributed or offered to contribute to his daughter's support. The answer to his petition reaffirmed the averments of the adoption petition to this effect. Thus there was fully at issue the important question in this case as to whether the father had "neglected or refused to provide for his

. . . child . . . for the period of one year or upwards." If that were proven, the court would have authority to decree the adoption "with the consent of the non-neglecting . . . mother alone, . . ." despite the father's assertion of willingness and ability thereafter to provide for his child. In Young's Adoption, 259 Pa. 573, there was a proceeding similar to this. The Supreme Court held, in regard to the finding by the court below that the father "has neglected and refused to support said child for upwards of a year," that "it was a matter within the jurisdiction of the court, and that was the proper tribunal to determine whether there had been such a neglect and refusal to support as is contemplated by law."

In his own behalf, Edward Kelly was examined as to the question of support. His counsel said: "The application for adoption, petition for adoption, avers that you never contributed or offered to contribute to the support of your daughter." Kelly replied: "I did up until it was stopped," and testified that he made four payments at the rate of $5 a month. He was earning $150 a month. On cross-examination, he denied that it was necessary for the child's mother to threaten him with criminal proceedings for non-support, and that he "contributed . . . all they wanted, . . . five dollars a month." He testified that since the refusal of that amount he had not contributed anything to the child's support.

The child's mother, Mrs. Frieda Sherman, testified that after the child's birth the father bought for it a pair of shoes, five yards of cloth for a dress and ten yards of outing flannel; that most of the child's clothing at that time was bought by the witness's aunt, one of the petitioners for adoption. She testified that after leaving her husband she worked; that after she was divorced from Kelly "he said he would give (for the child's support) five dollars a month as long as he was able, and if he wasn't, he wouldn't give it."

The divorce decree was granted Feb. 13, 1919; the petition for adoption was filed March 31, 1923; and in the more than four years that intervened, the child's father, by his own admission, made for its support only four five-dollar "contributions." His excuse for making no more of the monthly payments of $5 was that Mrs. Sheridan and her aunt refused the money. But the refusal of this pitiful dole of $5 per month would not release Edward Kelly from that obligation of support and maintenance which every parent owes to a child. Anna Henrietta Kelly was still as much the daughter of both her parents after the divorce as before, and it avails this father little now to say that his neglect to support his child arose from his former wife's refusal of the pittance he paid. If Kelly had been the father in fact that he was in name, he would have known how far short of providing for his child his "contributions" came. And if he had felt for his daughter the affection he should feel to justify this court in taking from the present custodian the child whom she has nurtured for so long a time, he would have brooked no refusal of his natural right to visit and care for his offspring.

Cases similar to this are the following:

Rhoades's Adoption, 42 Pa. C. C. Reps. 239; syllabus: "Where a married woman deserts her husband and child, is divorced, marries again and moves to another state, she cannot, eight years after the desertion and after the paternal grandmother of the child, who has always cared for it, has adopted it, secure a revocation of the decree of adoption, where it appears that the decree was in proper form, was assented to by the father, and that the grandmother was a competent and responsible person to take care of the child."

Breakiron's Adoption, 43 Pa. C. C. Reps. 419; syllabus: "Where the father of a child is dead and its mother has committed it to the custody of the poor

directors, and who have provided for its support and maintenance for a period of six years, during all of which period the mother of the child neglected and refused to provide for it, the consent of the poor directors to the child's adoption is sufficient, without the consent of its mother, and the petition of the mother, filed nearly two years after the decree of adoption, to have the decree of adoption vacated, will be refused."

Stamm's Adoption, 27 Lanc. Law Rev. 17; syllabus: "Under the Act of May 19, 1887, P. L. 125, the adoption of a minor child may be decreed where the court is satisfied that the welfare of the child would be promoted by so doing, with the consent of one of the parents who has not neglected the child, though without the consent of the other parent, who has neglected the child for a year or more."

In the case at bar it is clear that Edward Kelly, the father, has, as his own testimony shows, "neglected or refused to provide for his . . . child" for the period of upwards of four years. As to his profession of willingness to provide hereafter for his child, assuming that it could prevail against his confessed neglect so to provide heretofore, we might quote from a famous address and say: "We have but a lamp by which our feet are guided, and that it is the lamp of experience. We know of no way of judging of the future but by the past." And in judging by the past, we wish to know what there has been in the conduct of Edward Kelly for the last six years to justify those hopes with which he is pleased to acquaint this court.

Edward Kelly has, by his own admission, paid not more than $20 for his child's support in the four years since his wife was divorced from him. During a great part of that period his child has been kept and maintained in the home of the petitioners for adoption, a home he never visited. The child's first and tenderest attachments have been not to her father, but to her mother and her foster-parents. Edward Kelly now asks the court, in the name of his parenthood, to break the ties which bind this child to those who loved and cared for her while he remained to her a stranger, but the ties of love are stronger here than those of consanguinity.

## Conclusion.

The requirements of the acts of assembly providing for adoption have been met in this case. Fred and Catherine Miller, as their position and their conduct show, are "desirous of adopting" this "child as their heir." The petition represents that "they will perform all the duties of parents to such child," and the fact is unquestioned, for they have performed such duties heretofore. The "welfare of such child" will be promoted by such adoption, for the father has shown no interest in the child's welfare, and the mother, remarried, desires to have her foster-aunt and uncle adopt the child. The father has "neglected or refused to provide for his . . . child . . . for the period of one year or upwards, proven to the court." The court will, therefore, "with the consent of the non-neglecting . . . mother alone," which consent has formally been given, "decree that such child shall assume the name of the adopting parents and be subject to the duties of such child."

Now, to wit, Aug. 25, 1924, the rule to show cause why the decree of court made March 31, 1923, for the adoption of Anna Henrietta Kelly by Fred Miller and Catherine Miller, should not be revoked is discharged; and to preclude any question hereafter arising as to the validity of the former decree by reason of the fact that the father of the said Anna Henrietta Kelly was not served with notice of the proceedings for adoption which resulted in said

Kelly's Adoption.

decree, but did have notice of the present proceedings now had upon the rule to revoke said decree, we deem it expedient to enter the following

## Decree.

Now, to wit, Aug. 25, 1924, Fred Miller and Catherine Miller, his wife, residents of this county, having presented to this court their petition declaring that they are desirous of adopting Anna Henrietta Kelly as their heir, and that they will perform all the duties of parents to such child, and the court having heard the evidence adduced by the petitioners for adoption and by the parents of said child, and having given due consideration to said evidence and the arguments of counsel as to the law and the evidence in the case, and the court being satisfied that the welfare of such child will be promoted by such adoption; and that Edward Kelly, the father of said child, has neglected and refused to provide for said child for the period of one year or upwards; and Frieda Sherman, the mother of said child and the non-neglecting parent, having consented to the adoption of said child,

It is hereby ordered and decreed that said child, Anna Henrietta Kelly, shall assume the name of the petitioners for adoption and be hereafter known and called by the name of Anna Henrietta Miller, and shall henceforth have all the rights and be subject to all the duties of a child and heir of the said Fred Miller and Catherine Miller, her adopting parents, and that the said Fred Miller and Catherine Miller shall be deemed and taken in law to be the parents of the said Anna Henrietta Miller and have all the rights and be subject to all the duties of parents of the said Anna Henrietta Miller, as fully and to the same extent as if the said minor had been born the lawful child of the said adopting parents, all in accordance with the provisions of the acts of assembly in such case made and provided.

From William A. Wilcox, Scranton, Pa.