THE PEOPLE OF THE STATE OF NEW YORK ex rel. MABEL PICKLE, Respondent, *v.* HENRY PICKLE and Another, Appellants, Impleaded with the SHERIFF OF ERIE COUNTY, Defendant.

Fourth Department, December 23, 1925.

**Adoption — order was made on consent of father but without mother's consent — adoption proceedings were commenced prior to successful divorce action by mother in Ohio — mother abandoned child and five years later took him forcibly from adopted parents, child's grandparents — child was detained by sheriff — consent of parent, who abandoned child, not required under Domestic Relations Law, § 111 — adjudication on question of abandonment not conclusive without notice to said parent — question of abandonment may be tried in. habeas corpus proceeding — evidence shows that mother abandoned child — child restored to adopted parents.**

A child may legally be adopted, under section 111 of the Domestic Relations Law, without the consent of one of the parents who has abandoned the child.

but the order of adoption may be set aside where said parent was not given notice and opportunity to refute the charge of abandonment. The order, however, is not in such case null and void.

Although the statute contains no express provision requiring notice to a parent that he or she may be heard on the question of abandonment, an adjudication cannot be made that will be conclusive on the parent on that issue without such notice, either actual or constructive.

The question of abandonment may be determined in habeas corpus proceedings by the mother to recover the possession of her child, who was detained by the sheriff, in which it appears that when the child was about nine months of age the mother left the child in the possession of its father and paternal grandparents and remained away for a period of approximately five years, and that she then returned to New York and forcibly took the child from its grandparents, who had in the meantime become its adopted parents through an order entered in proceedings in which the mother was not notified, which were commenced prior to the commencement of a successful divorce action by the mother in Ohio, in which the custody of the child was awarded to the mother.

The evidence clearly established that the mother abandoned the child and that, therefore, the order of adoption, though irregular because of failure to notify her, is now conclusive.

APPEAL by the defendants, Henry Pickle and another, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 6th day of July, 1925, discharging Vernon Owen Pickle from the custody of the sheriff of Erie county or any other person detaining him, and from further restraint under and by virtue of the action of the sheriff of Erie county, and an order of adoption, and declaring the order of adoption null and void, and giving the custody of Vernon Owen Pickle to the relator, Mabel Pickle.

*John W. Hollis,* for the appellants.

*Bernard Swartz,* for the respondent.

SEARS, J.   The custody of Vernon Owen Pickle, a child six years of age, is the subject of this proceeding.

Vernon is the son of the relator, Mabel Pickle, and her former husband, Lyle Pickle, who were married in the city of Cleveland, on the 30th day of December, 1918.   Mabel Pickle was at that time a few months over sixteen years of age, and Lyle Pickle was twenty-two.   Vernon was born in Cleveland on November 24, 1919.   The young people had known each other at the time of their marriage for about a year, during which period Lyle Pickle had been living with his parents, the defendants Henry and Bertha Pickle, in Cleveland, in a rooming house conducted by the relator's mother.   After their marriage the young couple lived in various places, including Cleveland and Toledo in the State of Ohio, and Hornell, in the State of New York.   Finally in the month of June,

Fourth Department, December, 1925.          [Vol. 215

1920, they moved to Fremont, Steuben county, N. Y., a small hamlet about five miles from Hornell, which was then the home of Lyle Pickle's parents and grandfather. At Fremont, Lyle Pickle with his wife and child lived at the home of his parents. Lyle helped his father in his work as a carpenter, and also worked upon his grandfather's farm. The circumstances of the parents of Lyle Pickle were modest and money resources of the young couple were scanty. There is some conflict in the evidence as to whether the relations between Lyle and his wife at that time were good or not. The relator, the mother, and the defendant Bertha Pickle, the grandmother, of Vernon, both took care of him. He seems to have been a somewhat sickly baby. Lyle Pickle's grandfather offered Lyle the unfinished upper floor of a building in which there was a grocery store on the ground floor, to finish off and use as a home, and from June to August, in the evenings and at other times when he was not otherwise engaged, Lyle worked on putting down flooring, building a staircase and erecting partitions so as to make livable quarters for himself and his wife and child. He had not, however, progressed very far with the contemplated work by the last of August. During July the relator went to Cleveland to attend the funeral of her sister's husband. On her return the defendant Bertha Pickle noticed a change in the relator's attitude toward herself and toward her household.

The 24th day of August, 1920, is an important date in the history of the relator. On that day Mabel and the defendant Bertha Pickle were alone with the baby in the kitchen when a woman, whom Bertha Pickle did not recognize, came to the door, told Bertha Pickle that she was ill, said that she and others were traveling through Fremont and asked if she could have a cup of hot tea or coffee. When Bertha Pickle went to get the tea, this woman gave to the relator a note, which read as follows:

" *Wednesday.*

" MABEL,                              .

" Grab the baby and run. A big machine outside, four people in it. This is your last chance. Come down a purpose for you. Have clothes for you and things for the baby, so do not tarry even if you have to come in your nightgown. We are going south. There is no chance of our plans failing as every thing has been thought out."

Bertha Pickle made the tea and brought the woman a cup of it, and the woman then inquired the way to Buffalo. Bertha Pickle could give directions for only a short distance. Mabel then said: " I'll go over to grandfather's; they have a map there.

I will go over and get the map for you." According to the testimony of Bertha Pickle, it was at this time that the baby awoke. Mabel went to the baby and took him up, and while the talk about directions was proceeding, handed the baby to his grandmother and said, " I will go and get the map," and went out, and was not seen again by the defendant Bertha Pickle until Friday, June 26, 1925, almost five years later. At the time of leaving, Mabel Pickle was still partly nursing her child, then about nine months old.

The testimony given by Bertha Pickle in relation to these events is corroborated by Mabel, except that according to Mabel's version she said to the baby, " Come on Vernon, I will take you over to grandfather's," and Bertha Pickle interposed, saying: " No, you can go, but my son's baby you will never take." These expressions seem hardly reasonable when we remember the age of the child; that the mother of the child was merely going to get a map from the neighboring house, and the grandmother of the child had no knowledge, and quite evidently no thought of any intended absence of Mabel except that necessitated by fetching the map.

The strange woman left the house shortly afterwards and both she and Mabel entered a waiting automobile and drove away without further word to any one.

Within two months of this time Lyle Pickle went to Cleveland, met his wife and talked about a possible reconciliation but without effect. At about the beginning of the year 1921 Lyle Pickle again went to Cleveland to see her for the same purpose, and while there process was served upon him in an action in an Ohio court of competent jurisdiction for a divorce on the ground of gross neglect of duty and extreme cruelty. The complaint was not served with the process which began the action. Lyle Pickle did not appear in the divorce action, and on the 18th day of June, 1921, a judgment of divorce was granted Mabel Pickle, which also awarded her the custody of her son Vernon.

About two or three weeks before the divorce action was instituted, however, a proceeding was begun in the Surrogate's Court of Steuben county for the adoption of the child Vernon by his grandparents, Henry and Bertha Pickle, and on December 14, 1920, upon the consent of the child's father, Lyle, and the child's grandparents, Henry and Bertha Pickle, and upon the allegation that the mother, the relator, had abandoned the child, a decree was granted allowing and confirming the adoption of Vernon by his grandparents, and ordering that " the said minor Vernon Owen Pickle shall hereafter be regarded and treated in all respects as the child of the said Henry Pickle and Bertha Pickle." This decree

was granted without notice to the mother of the child. Following the events of August 24, 1920, letters passed between Mabel and Lyle Pickle which show on the part of Mabel a very natural interest in and anxiety for the welfare of their child. In none of these letters, however, is there any request that the baby be intrusted to her. In a letter dated September, 1920, she says: " Raising the baby around your folks. He will know some day what his mother went through." In one written in October, 1920, she says: " His mother will be with him when he needs money for his education and to help him through life." In another written November, 1924, she writes: " His little bank roll has grown some. How I hope I will be able to keep it going till he is of age. It has not been much I have done for him. At any rate no day goes by that he does not talk to me from his picture. Just tells me so much all about himself. It would be a pleasure to hear from him before he is five." A letter of May, 1925, contains this expression: " Yet I am happy if it were not for Vernon whom I cannot help but worry about when I do not ever see him or know how he is." At Christmas in 1920 she sent the baby a tricycle, but she has not sent him any other gift. There is proof that Mabel has prospered financially.

Mabel Pickle testified that she knew when she went away that the baby would be well taken care of by his grandmother, and there is proof as well as a concession upon the record that the child has been well cared for at the home of his grandparents.

Relying on the divorce obtained by the relator, Lyle Pickle married in the State of Pennsylvania, where he is now living with his wife.

We now come to another episode which occurred during the latter part of June, 1925. About June twenty-fourth the relator, together with her sister, Merle Watson, and her sister's husband, proceeded to Steuben county to get possession of Vernon. She consulted counsel and was advised that she was apt to be arrested if she took the baby without an order from the New York courts. Nevertheless, on June twenty-sixth she and her sister, with two men, one of whom was the sheriff of Steuben county, went to the residence of the defendants Henry and Bertha Pickle. Bertha was at that time alone in the house with the child who was asleep. The relator and her sister with two men came to the door. Bertha Pickle recognized Mabel and her sister. Mabel said she wanted to see the baby. Bertha replied that she could not see him then because he was asleep. Mabel said: " Then I will wait until he awakens." Bertha said that they could not come in because she was there alone and two strange men were with them, and she did

not know what their intentions were. One of the men then said that he was the sheriff of Steuben county and showed a badge, and said he had the right to bring them in. At this they were admitted. Mabel Pickle walked up to the bed and took hold of the child. Bertha Pickle tried to hold on to the child to prevent Mabel carrying him away. At this, the sheriff told the grandmother to stop. Bertha Pickle said that she had adoption papers and asked them to wait until her husband could get there, but they would not do so, but immediately left the house taking Vernon with them. Mabel, her sister, and the two men, together with the child, entered an automobile which was waiting for them. A struggle ensued between Bertha Pickle, who had followed them out, and those in the automobile, but the occupants of the car pushed Bertha away and pushed away a girl who had intervened to help Bertha. The car was driven away.

An information was promptly laid before a justice of the peace charging Mabel Pickle with assault, and on this information a warrant was issued, in consequence of which Mabel Pickle, the relator, was taken into custody by the sheriff of Erie county, and while in such custody had the child Vernon with her. This accounts for the sheriff of Erie county being made a defendant in this proceeding.

The petition of Mabel Pickle for a writ of habeas corpus is dated June 29, 1925. The order for the writ was granted June 29, 1925, and the writ was made returnable at two o'clock in the afternoon of the same day. At that time counsel appeared for the defendants Henry and Bertha Pickle, and moved to dismiss the writ on several grounds, one of them being that the writ had not been served on such defendants. The court denied the motion and ordered the hearing to proceed. Although no return had been filed, evidence was received without objection as to the claims of the respective parties. The hearings closed on July first, and on July second a final order was granted discharging the child Vernon " from the custody of the sheriff of Erie County or any other person detaining him, and from further restraint under and by virtue of * * * the order of adoption, * * * " and ordering " that said order of adoption is null and void as no notice of the proceedings was given to the mother of said Vernon Pickle, and she had not abandoned the child," and giving the child into the custody of his mother, Mabel Pickle.

Under these circumstances we have determined to treat the case as though a return had been filed setting forth (a) the abandonment of the child by his mother upon August 24, 1920; (b) the decree of adoption, and (c) that the best interests of the child

required the custody of his adopted parents over him to be continued.

Assuming as we must that the judgment of divorce is valid, it constitutes a conclusive determination of the right to the custody of the child as between the parents upon the facts as they existed at the time of the granting of such judgment. (*People ex rel. Allen* v. *Allen*, 40 Hun, 611.) It is not conclusive upon others than the parties to the action. (*Matter of de Saulles*, 101 Misc. 447, 459.) The defendants Henry and Bertha Pickle do not found their claim to the custody of the child upon the authority of the child's father, but upon an order of adoption granted by the Surrogate's Court which in turn has its basis in the welfare of the child itself. The adoption proceeding antedates the beginning of the divorce action. The statute relating to the adoption of children provides that the consent of a parent who has abandoned the child is unnecessary. (Dom. Rel. Law, § 111, as amd. by Laws of 1913, chap. 569, and Laws of 1915, chap. 352; since amd. by Laws of 1921, chap. 655; Laws of 1922, chap. 628, and Laws of 1924, chap. 323.) The statute contains no express provision requiring notice to a parent that he or she may be heard on the question of abandonment. Without such notice, however, either actual or constructive, an adjudication cannot be made that will be conclusive on the parent on that issue. (*People ex rel. Lentino* v. *Feser*, 195 App. Div. 90; *People ex rel. Cornelius* v. *Callan*, 69 Misc. 187.) Somewhere, either in the Surrogate's Court, or in some proceeding like the one now before the court, Mabel Pickle is entitled to attack the finding of abandonment made in the adoption proceeding. We will assume that she has the right to raise that question in this proceeding. The order of adoption, however, is not void or voidable because of her right to attack it, but is valid unless the finding of abandonment was erroneously made. (*People ex rel. Lentino* v. *Feser, supra; Matter of Antonopulos*, 171 App. Div. 659, 660.) In our opinion, however, the finding of an abandonment before December 14, 1920, was not erroneous. Her conduct, when she left Fremont in August, 1920, stated above, impels that conclusion. Her later conduct confirms it. Youth and its irresponsibility, loneliness of country life, even cruel treatment by her husband, are insufficient to alter the fact. Abandonment is conclusively established, and the relator has not successfully attacked the validity of the decree of adoption.

It was open to the relator, despite the legality of the adoption proceeding, to found a claim to the custody of the child on the best interests of the boy himself. However, the record is barren of proof to show that the welfare of Vernon would be improved by changing his environment.

The relator certainly gained no right by the violent methods pursued on June 26, 1925. The possession of the child which she then obtained is not a custody which the court should respect.

The order should be reversed, with costs, the writ dismissed, and the child Vernon Owen Pickle ordered to be returned to his adopted parents, Henry and Bertha Pickle.

HUBBS, P. J., CLARK, CROUCH and TAYLOR, JJ., concur.

Order reversed on the law and facts and writ dismissed, and the child Vernon Owen Pickle ordered returned to his adopted parents.