Hagabty, J.
On the 7th day of August, 1946, respondent, who shall remain anonymous, executed an agreement whereby she unconditionally surrendered the care and custody of her child, which was born out of wedlock on the 13th day of June, 1946, to Rebecca Talbot Perkins Adoption Society, Inc., hereinafter referred to as the Society, an “ authorized agency ” under the jurisdiction of the State Department of Welfare (see Social Welfare Law, § 371, subd. 10). In seeking to regain custody of the child by means of this habeas corpus proceeding, instituted on the 2d day of October, 1946, respondent has alleged that “ the said infant was obtained by fraud and while your petitioner was in an extremely disabled physical state.”
*673 No proof of fraud was adduced. While pregnant and on the 17th day of April, 1946, respondent requested the Society to take the child when born. The child was turned over to the Society nine days after its birth. The proof shows that the nature of the surrender agreement, executed one and one-half months thereafter, was fully known to respondent at the time of its execution by her.
Surrender of custody of a child by a parent to an individual as an incident of adoption by the latter, whether or not by written instrument, is without statutory cognizance. Even though there be such a written surrender, no person can be legally adopted save in pursuance of article 7 of the Domestic Relations Law which provides, inter alia, that such adoption must be on consent of the mother of a child born out of wedlock, unless she has abandoned the child; and where the child is less than eighteen years of age, no order of adoption shall be made until the child has resided with the foster parents for at least six months unless, within discretion of the court, such period of residence is dispensed with. (See Domestic Relations Law, § 111, subd. 3; § 112, subd. 7.) Accordingly, the surrender of a child to an individual pursuant to a writing does not spell out, necessarily, such irrevocable abandonment of the child as obviates the necessity of the consent of the mother to adoption. All factors must be taken into consideration, inclusive of the trial period of six months, in determining whether there has been an irrevocable abandonment. (People ex rel. Lentino v. Feser, 195 App. Div 90; Matter of Anonymous, 178 Misc. 142; Matter of Cohen, 155 Misc. 202.)
A different situation is presented where a child is surrendered to an authorized agency. The Social Welfare Law (§ 384) provides the method whereby the guardianship of the person and the custody of a destitute or dependent child may be committed to an authorized agency by an instrument in writing. It contemplates execution of such an instrument by the mother of a child born out of wedlock and provides that the guardianship shall be in accordance with the provisions of the instrument which “ may also provide for the absolute' surrender of such child to such authorized agency. * * * ” (§ 384, subd. 2.)
Upon surrender in accordance with such agreement, the guardianship of the child and its custody is committed to the authorized agency, irrespective of whether or not it succeeds in effectuating an adoption. The adoption statutes expressly eliminate the necessity of consent to the adoption by a mother who has surrendered a child to an authorized agency, viz.: “ The consent shall not be required of a parent * * * who *674 has surrendered the child to an authorized agency for the purpose of adoption under the provisions of the social welfare law * * Instead, it is the consent of the authorized agency which is required. (Domestic Relations Law, § 111, subd. 4.) In other words, save for the provisions of the Social Welfare Law (§ 383), the surrender agreement irrevocably transfers guardianship and custody. The authorized agency, for example, having accepted the child pursuant to the agreement, may not thereafter insist upon returning the child to the natural mother. It is charged thereafter with the care and supervision of the child, unless the child be adopted. (Social Welfare Law, § 383, subd. 2.)
Upon commitment of the child to an authorized agency a parent shall not be entitled to custody except upon consent of the court or public authority responsible for the commitment “ or in pursuance of an order of a court or judicial officer of competent jurisdiction, detérmining that the interest of such child will be promoted thereby and that such parent is fit, competent and able to duly maintain, support and educate such child. * * * ”. (Social Welfare Law, § 383, subd. 1.)
The only issue here is whether the best interests of the child would be promoted, in accordance with the statutory language, or even under the parens patries doctrine, by returning the child to respondent. We think not. Respondent is a thirty-six year-old woman who has had two children by a first marriage. After a divorce, she married her second husband in 1942. She receives the sum of $5 a week for the care and support of the one child of the first marriage of whom she has custody. Her second husband entered the armed service and went overseas in 1944, respondent receiving an allotment from him. Respondent became pregnant as the result of intercourse with another man in September of 1945. She was divorced from her second husband in February of 1946. If successful in this proceeding, of necessity, respondent would have to give up her occupation of practical nursing and care for two small children or engage someone else to take care of them. There is no adequate assurance that her unmarried brother, freshly returned from the armed service, will continue indefinitely to live with her and contribute to her support.
The child will be adequately maintained by the Society with the distinct possibility that a favorable adoption will be arranged. There is proof that the child is now in the care of .good people with whom he is to be left during the course of the trial period prior to legal adoption, and that, if this adoption be consummated, the child will have a happy home and receive a *675 thorough education. Such an adoption by fostering parents will tend to overcome the disadvantages of his origin and serve to better his prospects in life.
The order should be reversed on the law and the facts, without costs, and the writ dismissed, without costs.