In the Matter of the VOLUNTARY ADOPTION OF A MINOR UNDER TWELVE YEARS.

Surrogate's Court, Monroe County, May 25, 1927.

**Infants — adoption — child of New York parents may be adopted by residents of Ontario, Canada — Domestic Relations Law, § 112, applied.**

A child who was born in this State, and is a resident here with its mother, may, under section 112 of the Domestic Relations Law, be adopted by citizens and residents of the province of Ontario, Canada, in proceedings instituted in the county of the residence of the child and upon consent of the child's sole parent.

VOLUNTARY adoption proceeding.

---

FEELY, S. The question arises herein, *ex parte*, as to the jurisdiction of this court to confirm an adoption agreement by and between petitioners, whose home is in Toronto, Canada, and the sole parent of a child born January 28, 1927, in Monroe county, N. Y., where its mother is domiciled. The foster father is a citizen of the Dominion, who married a citizen of New York. This couple is domiciled at Toronto in the Province of Ontario.

Upon examination of our New York statute, I find it does not contain any prohibition against non-residents adopting resident children; but in section 112 of our Domestic Relations Law (as

Surrogate's Court, Monroe County, May, 1927.    [Vol. 130

amd. by Laws of 1924, chap. 323) I find permission so to do. The first subdivision requires foster parents and the person to be adopted to appear before certain courts, one of which is the Surrogate's Court " of the county where the foster parent or parents reside, or, if the foster parents or parent do not reside in this state, in the county where the minor resides."

This latter portion fits the present case exactly.

Inquiry has also been directed to the effect of such order upon the citizenship of this child, notwithstanding the fact that a bottle, rather than a ballot, is the crying need of this infant here and now, and will continue to be his greatest need anywhere for a long time to come.

An excellent Canadian bottle (unprohibited) being at hand, makes this question one of secondary importance, especially as the adoption will, probably, have no effect whatever on the political status of the infant. His citizenship was fixed by the fact of his birth here from an American mother; and cannot be changed by her either giving him in adoption or her hand in remarriage.

In an opinion rendered by the Attorney-General of this State in 1923 it is held that the adoption of an alien minor by an American citizen does not confer American citizenship on the adopted person.    (Opin. Atty.-Gen. 1923, p. 386.)

I understand it is the policy of this country not to prevent expatriation, or marriage with, or adoption by foreigners. For reasons similar to those given by our Attorney-General, I should expect to find the adoption of a native citizen of New York by a Canadian subject would not, of itself, confer upon the adopted child the political status of its foster parents. It is clear, as I am reliably informed, that if these foreign adoptive parents were citizens of those parts of the Dominion where the English law still prevails, i. e., in Newfoundland and Prince Edward Island, the child would not become, by virtue of the New York adoption alone, a Canadian subject, because the English law has not yet recognized the status of adoption, although it enforces, to some extent, agreements whereby one is placed in *loco parentis* to another.

In almost every other Province of the Dominion, I am told, the status of adoption is authorized by statute. Under the act adopted by Ontario in 1921, this adult couple might petition the judge of the County Court for authority to adopt this infant. The consent of this sole natural parent would be necessary. There is also required that a certain Provincial officer certify in writing that the child has lived for two years previously with the applicants,

Misc. 793]       Surrogate's Court, Monroe County, May, 1927.

and that during this period the conduct of the applicants and the conditions in which the child has lived have been such as to justify making the order.   It is within the power of this officer to certify the applicants are fit and proper persons and to recommend that the probationary period be dispensed with for reasons to be stated in his certificate.   The statute divests the natural parent of her rights in the child, and makes such child, for the purposes of custody of the person and rights of obedience, to all intents and purposes the child of the adopting parents.   This provision, and one cited below as to comity between the Provinces, is significant on the question of the extraterritorial recognition of the New York order.

The Ontario act gives the child the same right to claim for nurture, maintenance and education upon his adopting parents that he would have were they his natural parents; and he also obtains the right to inherit as if born to such parents in lawful wedlock, and stands thereafter, in regard to legal descendants, but to no other kindred, of such adopting parents, in the same position as if he had been born to them.   The act also provides that, except in so far as may be in conflict with the Ontario act, a person resident out of the Province, who has been adopted in accordance with the law of any of the Provinces of the Dominion of Canada, shall, upon proof of such adoption, be entitled in the Province of Ontario to the same right of succession to property as he would have had in the Province in which he was adopted.

Under New York law, and that of some other States of the Union having similar laws, the status created by such an adoption as the Ontario act contemplates would be recognized as constituting an estoppel on the adult participants, creating a status not open to collateral attack, and carrying with it a right to inherit both real and personal property in this State, as well as in Ontario. The following authorities bear on this phase of the matter: *Matter of Leask* (197 N. Y. 193); *N. Y. Life Ins. & Trust Co.* v. *Viele* (161 id. 11); *Woodward's Appeal* (81 Conn. 152); *Succession of Caldwell* (114 La. Ann. 195).

I am unable to say definitely whether a comity exists between the two nations similar to that which exists between the States of this Union having like laws on adoption, and likewise between the Provinces of the Dominion, under which the New York adoption would be recognized by the courts in the Province of Ontario.

The right of inheritance in Canada is not essential to a valid adoption in New York.   If the adoptive parents, after having given this child a home, be advised by Canadian counsel that adoption in the Province of Ontario is essential to secure the right

to inherit real estate in Canada in case of intestacy they can petition the County Court there to authorize the adoption of this child. I am informed the Ontario act, like our statute, does not require the physical presence of the natural parent before the court, but only her consent, which, to some extent, is formally established by the New York order. Meantime, I see no reason to withhold from this infant the manifest advantage of getting into a good home at once.