In the Matter of the Estate of ANNIE F. BAMBER, Deceased.

Surrogate's Court, Monroe County, May 18, 1933.

*Mina M. Beach* [*Elliott W. Gumaer* of counsel], for the petitioner.

*William E. Young*, for the claimant.

FEELY, S.  Before finally settling this estate, the executor began this proceeding to probate anew the last will and codicil of this testatrix for the purpose of determining the claim made to the executor by Arthur Bird Bamber that he is the adopted son of this testatrix.  His claim is based upon an " agreement," signed by the husband of testatrix, but not by her, whereby her husband alone, without any recital referring to his wife, agreed with the Children's Home of Hamilton, Ontario, Canada, " to receive Arthur Bird into my home, to provide him with board and lodging & clothing and in every respect to bring him up as my own child."  The institution retained supervision of the home, and reserved the right to remove the child therefrom in case it " should be considered that he had been unjustly and unwisely treated."  The institution did not formally join in this agreement; it bears only the signature of John Bamber, at Rochester, N. Y., under date of November 16, 1874.  In this agreement nothing is said as to John Bamber, or his wife, giving or leaving any property to this child, in any form like those that are collected in the *Doppmann Case* (137 App. Div. 82); or in the two cases cited by claimant (*Van Dyne* v. *Vreeland*, 11 N. J. Eq. 370, and *Sutton* v. *Hayden*, 62 Mo. 101); nor is anything said therein, or orally, as to the child becoming an " heir " to any one (*Merchant* v. *White*, 37 Misc. 376; 77 App. Div. 539); nor does the word " adopt," in any form, appear in this writing (See *Simmons* v. *Burrell*, 8 Misc. 388, 401), although this is not strictly necessary. " To bring up " a child means, ordinarily, to nurse, rear and educate until full age; but such an agreement alone imposes no obligation to will property to such child.  (*Baumann* v. *Kusian*, 164 Cal. 582.)

There was never any formal adoption of this child anywhere.  At the date of this agreement there could not have been any legal adoption in Canada, for not until 1921 did the Province of Ontario, Canada, abandon the common-law position on this subject and enact

its first adoption act (See *Matter of Voluntary Adoption of Minor*, 130 Misc. 793); whereas on June 25, 1873, about sixteen months before this agreement was made, the State of New York had already enacted its first adoption statute, chapter 830 of the Laws of 1873, which declared that "no child shall hereafter be adopted except under the provisions of this act." As adoption everywhere is thus not a matter of inference or presumption (*Matter of Huyck*, 49 Misc. 391), but a purely statutory matter, and in derogation of the common law, the statute must be strictly complied with in all its essential parts (*Murphy* v. *Brooks*, 120 Misc. 704; *Matter of Monroe*, 132 id. 279), or no status to inherit is acquired. At no time or place, therefore, did this claimant acquire, as regards either this testatrix, or her husband, the legal status of a prospective heir, who, in case of intestacy, could legally inherit from either of them, under the statute. (See *Matter of Chambers*, 112 Misc. 551, 556; *Matter of Powell*, Id. 74, 76.) Only such status qualifies one to contest a last will. Only those persons are necessary parties to probate who would inherit if there were no will. Being, at best, a mere creditor or claimant against the estate, an informally adopted person has no more standing to contest a last will of the alleged foster parent than if there had been no agreement or attempt to adopt. This results from the well-known distinction, in this matter of adoption, between the law of status and the law of contract. (See *Matter of Ziegler*, 82 Misc. 346; *Brantingham* v. *Huff*, 43 App. Div. 414.) As no formal adoption resulted from, or followed this contract, it is unnecessary to consider the rules of comity, or of "conflict of law," on this phase of the subject. (73 A. L. R. 964; *Matter of Monroe*, 132 Misc. 279, 280; *Matter of Voluntary Adoption of Minor, supra.*)

So, this contract remains a mere contract, in the sense that it never gave rise to the legal status of adoption, either in Canada or in New York, although in both jurisdictions such a contract might, in some circumstances, have been enforced generally by the claimant, as a contract against the estate of the alleged foster parent if it can be construed as having been intended to confer any property right on the claimant, as was expressly done in the cases collected in the *Dopperman Case* (*supra*) and in the case cited by claimant from the Canadian reports (*Roberts* v. *Hall*, 1 Ont. 388); but it does not follow from the possibility of enforcing generally such contract that it can also be specifically enforced, with the result of conferring legal status equivalent to adoption. It is doubtful whether any court ever decreed a living party should specifically perform a contract to adopt. A court of equity "cannot compel an adoption, because of the personal relationship involved and because the statute requires

the consent of the foster parent. It cannot compel an adoption in the property aspect only, for the statute does not provide for a partial adoption. (*Erlanger* v. *Erlanger*, 102 Misc. 236.)

" It is true that the courts have in effect compelled specific performance, in its property aspect only, of an agreement to adopt by impressing a trust upon the property in cases where there has been full performance on one side and where the defaulting party has died without effecting the adoption." (*Erlanger* v. *Erlanger*, 102 Misc. 236.) (See, also, *Barrett* v. *Miner*, 119 id. 230; *Brantingham* v. *Huff, supra.*)

John Bamber, however, fully performed whatever he promised in this contract; and no claim was made by Arthur on his estate. Even if this contract could be taken to be an agreement to " adopt " this child, in a broad sense, still an agreement merely to adopt a child is not an undertaking not to disinherit such child (See *Baumann* v. *Kusian, supra; Odenbreit* v. *Utheim*, 131 Minn. 56); nor does it confer, under the statutes, either status to contest, or a right to inherit in intestacy, because these correlative rights are wholly statutory; nor does it confer on claimant the rights of a child adopted after the making of a last will (*Bourne* v. *Dorney*, 184 App. Div. 476; affd., 227 N. Y. 641), because both wills mentioned herein were made long after the date of this contract.

It has been held, however, that a contract, made before the statute of 1873, to adopt and leave property was invalid, because not authorized by any statute at that time so as to be a possible legal consideration for such agreement. (*Ball* v. *Brooks*, 173 N. Y. Supp. 746.) While this bears more directly on the Canadian aspect of this case, still the suggestion of consideration has a bearing on the inability of John Bamber to inherit from Arthur Bird, as mutuality would require he should. The case last cited also holds that a subsequent ratification is possible. Assuming the contract gave the claimant status to contest the will of John Bamber, the question arises whether the husband's contract was binding on his wife, this testatrix, who was not a party to it. Had there been a formal adoption, she was required to join the husband in it. (Dom. Rel. Law, § 111, subd. 2.) This contract, in so far as it may be a contract conferring rights as to personal property, did not need to be evidenced by a writing signed by her, although clear proof would be required (*Merchant* v. *White*, 37 Misc. 376, 379); but in so far as she is claimed, by unwritten ratification, to have assumed to bind herself to do what she then could not legally do except in writing, namely, to confer and accept the status of inheritance, her signature was essential, because even damages cannot be recovered for the breach of an oral agreement to do what the promisor could only be

compelled to do, under the statute, upon evidence in writing signed by the party to be charged (See. *McLachlin* v. *Village of Whitehall,* 114 App. Div. 315, 318, 319; *Canute* v. *Minor,* 258 N. Y. 558); and so, much less could the oral agreement have been specifically enforced in her lifetime, for this reason, and for the further reason quoted above from equity practice. (See, also, *Merchant* v. *White, supra.*) The only evidence, if such it be, of her ratification is contained in the letter in which her husband, sending back the signed contract, wrote: " We have already become attached to Arthur, and it would be hard for us to part with him." There is no other evidence of any act or declaration on her part tending to show she, at any time, approved and joined in her husband's undertaking; but rather the contrary seems to be indicated by what evidence there is in this record. An oral promise to make claimant an heir is briefly discussed in *Merchant* v. *White* (*supra*); and a much more extensive discussion of such a written contract is found in the case of *Middleworth* v. *Ordway* (117 App. Div. 913; affd., 191 N. Y. 404). In the latter case a husband agreed in writing with a natural parent that when the latter's daughter became eighteen, she should have a right of inheritance to the property of himself and his wife, the same as though she were their legitimate offspring. The wife, however, did not sign this contract; nor was there any evidence she ever consented to it; nor was there any formal adoption. It was held that the child had not been legally adopted; but was entitled, nevertheless, as against the husband and his estate, to the benefits secured by the rest of the contract, which were far more tangible and proprietary than any conferred by the contract now in question. Repeating what was said of the husband of this testatrix, even if this contract bound, or came to bind this testatrix also with him, upon any valuable consideration whatever, still it did not duly confer on this claimant, as regards her, the legal status of a child entitled, under the statute, to inherit from her in intestacy; nor *vice versa;* and so he is in no position to contest this, her last will; nor even to make a claim against her estate as a creditor, for it is beyond dispute that the husband of this testatrix did, at his own cost, keep said child in his home, and did board, lodge and clothe him, and did in every respect bring him up as his own child; and upon John Bamber's death, the child made no claim upon his estate; and there are no other tangible or property rights provided for in this contract. The claimant has long since received all that was legally coming to him.

Upon the signing of the contract by John Bamber, husband of this testatrix, the child remained in the Bamber home here until about the time of John Bamber's death, November 18, 1917. Thereafter the claimant continued to reside, and now resides in Rochester. The

records of this court show that John Bamber, by his last will, dated February 14, 1900, gave all of his estate, about $17,000, to his widow, this testatrix. In the proceedings on his estate, his widow, as his executrix, alleged that the only next of kin or heir of her said husband was his brother Henry. The claimant was then adult and competent, resident in Rochester; but was not formally made a party to the proceeding to probate the will of John Bamber, which resulted in a decree of probate on December 12, 1917; but it seems quite likely that this claimant at the time, or shortly thereafter, became aware of that proceeding.

Thereafter, Annie F. Bamber, this testatrix, and widow of said John Bamber, died in Monroe county April 9, 1932, willing all her estate, consisting of less than $1,000, to her sister-in-law and to her nephews and nieces, being the widow and children of the brother of testatrix, the Rev. James Allen, late of Toronto, who had been interested in the original placing of this claimant in the home of his brother-in-law, John Bamber. No mention of this claimant is made in Mrs. Annie F. Bamber's will, dated in 1919; nor in the codicil she made to it in 1922. In the petition to probate these writings, the executor alleged, in the new form of the printed blank, that testatrix did not leave " any adopted child," but this claimant was not made a party to the probate proceeding in her case, which admitted the two writings, above mentioned, by decree dated June 17, 1932. Claimant has now had his " day in court;" and has been unable to make out a *prima facie* case either of status, or of claim, against either estate.

Enter a decree dismissing the claimant's objections on the merits, and ratifying and confirming the probate of the will and codicil accordingly.