In the Matter of the Adoption of MORLEY KAMLER MARKS, a Minor under the Age of Twelve Years, by ABRAHAM R. LEVY and MARIAN KAMLER LEVY, His Wife, Foster Parents.

Surrogate's Court, Westchester County, April 23, 1936.

*Cooley & Van Derveer* [*John T. E. Van Derveer* of counsel], for the petitioners.

*Harry Seiden,* for James Garland Marks, the father.

SLATER, S. The petitioners are seeking the adoption of one Morley Kamler Marks, a child of five years of age. The mother of the child is dead; the father is alive and has refused to consent to

the adoption.  The question arises as to whether, upon the facts and the law, it can be held that the father has abandoned the child. The welfare of the child is not an issue in this proceeding.  To confer jurisdiction of the adoption, consent must be had or the fact of abandonment must exist.  (*Matter of Johnston,* 76 Misc. 374, 376; *Matter of Livingston,* 151 App. Div. 1, 7.)

The father and mother had resided in Butler, Pa., some distance west of Pittsburg.  The mother died in childbirth and the petitioner, Marian Kamler Levy, is her sister.  A few days after the mother's death, the child was brought by the aunt to her home in New York and later into the county of Westchester.  The taking of the child by the aunt was predicated upon a signed agreement, dated the 13th of April, 1931, between the father, J. Garland Marks, and the aunt.  This agreement recites the marriage, the birth of the child and the death of the mother.  In it the father agrees that the aunt shall have full power to exercise her judgment and discretion in the care, maintenance and support of the son and shall have complete control and custody until he arrives at the age of majority. The aunt agrees to care for, maintain, support and educate the child and keep him until he arrives at the age of majority.  The father empowers the aunt to appoint a successor to act upon her death or upon her becoming unable or incapacitated to keep, maintain and support his child, subject, however, to the following provision: " Provided that if at the time of the death or incapacity in any way of the said Marian Kamler Levy, I, J. Garland Marks, am living and shall be willing and able to take care of the said Morley Kamler Marks, then the said Morley Kamler Marks is to return to me, the said J. Garland Marks."

The testimony is to the effect that the father has had small earning capacity since the beginning of the financial depression. The petitioners have offered proof that the father has sent only certain small sums for the child and that his writing was infrequent. They contend that these facts constitute an abandonment by the father.

The petition indicating a desire to adopt the child was verified on January 11, 1936.  Apparently there had been some talk between the parties with regard to the adoption and the father had declined his consent about June, 1935.  The aunt and the child visited Pittsburg about that time without notifying the father of their presence in the city.  He learned of the visit through other sources and made an attempt to see the child but the aunt and the child had returned to New York.

In June, 1935, the father declined to consent to adoption because it involved possible rights of the child in property which might come

to him from his father (the child's grandfather) and he further stated that his father is opposed to changing the name from " Marks " to " Levy." This refusal was warning of no intention to abandon and that custody was subject to parental right. All the parties are of the Hebrew faith.

Adoption is a statutory matter and in derogation of the common law. Consequently, the statute must be strictly complied with in all its essential parts. The burden of the proof is upon the petitioners to show abandonment by the father of his child.

The agreement between the father and the aunt is a custodial agreement creating a practical guardianship for the child. There is in the agreement no evidence of surrender of parental ties, as existed in *Matter of Dein* (135 Misc. 244). That equities, if any exist, may stand in favor of those seeking adoption is not enough and the courts are reluctant to sever finally the tie between a parent and a child.

*Matter of Bistany* (239 N. Y. 19), wherein the court decided against the adoption, is much in point. Judge CARDOZO found there was no abandonment. A habeas corpus proceeding brought later under the title of *People ex rel. Matejka* v. *Bistany* (221 App. Div. 879) affirmed the dismissal of a writ of habeas corpus. On appeal (249 N. Y. 581) the writ was dismissed and the infant was permitted to remain in the care and custody of the defendant Bistany " on the ground that a prior decision of the court that the child's interest would be best promoted by her remaining with defendants was *res adjudicata*." Thus the Court of Appeals refused to permit the adoption, but was unwilling to have the child taken from the Bistany home. That is the practical result of the decision herein. The child is in the custody of the petitioners under the agreement between the father and the aunt. The situation should not be disturbed. The petitioners are asking for more than custody. They seek to make the child their own. Only unequivocal and absolute abandonment of the child may give approval of the contract of adoption. (*Matter of Cohen*, 155 Misc. 202; *Matter of Norris*, 157 id. 333.) The father has neither renounced nor abandoned, nor has he neglected his child, as may be shown by the evidence of the written agreement in which he did the wise and highly proper thing of consenting to give custody of the child of a few hours or days of age into the hands of the maternal aunt who was willing to become its custodian. Such written agreement is not abandonment. It was a demonstration of parental care and control. Neither silence nor inaction since the agreement can create an inference in law of surrender. As long as the father evidences an interest in the child and still retains the right under the agreement, upon the

death of the aunt, to take back the child, the court should not sever his tie to the child. He may well rest upon the agreement. The right reserved to take back the child, if the aunt should die, preserves his parental right. If the adoption should be permitted and the aunt should die, then the foster father would have legal control of the child. The proposed adoption would not change the personal status of the child. If this application is denied, the father's natural right is preserved. The severance of parental ties will not benefit the child. Their continuation is desirable. The motion to dismiss, reserved upon the trial, is granted. The prayer for the allowance of the adoption is refused.

Submit order denying the petition.