THE PEOPLE OF THE STATE OF NEW YORK ex rel. ANNA MARA-BOTTINI et al., Relators, against MARY FARR et al., Defendants.

Supreme Court, Special Term, Chemung County, March 19, 1942.

*Alec Rosefsky* for relators.

*John E. Sullivan* for defendants.

PERSONIUS, J. This proceeding involves the custody of Mary Elizabeth Mirich, aged three, and here called " the infant." Her father and mother died leaving the infant and another infant daughter.

The relators, Anna Marabottini and Joseph Marabottini, claim custody as foster parents by adoption.

The defendants, Charles Mirich and Dora Mirich, are the paternal grandparents of the infant. The defendant, Mary Farr, is the maternal grandmother and the defendant, Catherine Agnes Aderhold, is a sister of the infant's deceased mother, and is here called " the aunt."

After the death of the infant's parents, she, by mutual consent, went to live with her maternal grandmother and aunt, while the other child, Joan, lived with the paternal grandparents. The paternal grandfather was appointed guardian of the *property* of the infant but not of her person. Thereafter she also went to live with the paternal grandparents with the understanding that the two children were to be raised by the paternal grandparents together.

About December 3, 1940, the paternal grandparents delivered the infant to the relators who resided in Broome County. On January 13, 1941, the Broome County Surrogate made an order allowing and confirming the adoption of the infant by the relators. Neither the maternal grandmother nor the aunt had notice of, or were parties to, the adoption proceeding. The paternal grandfather avers that he and his wife signed a consent but informed the foster parents that they should also get the consent of the maternal grandmother, Mary Farr.

On learning of the adoption, Mrs. Farr obtained a writ of habeas corpus. The foster parents upon being served with the writ, and on the advice of their then attorney, delivered the infant to the maternal grandmother and did not appear on the return day. An order was granted by default, giving the custody of said infant to the maternal grandmother. She has permitted the infant to reside with her daughter, the aunt, Catherine Agnes Aderhold.

The relators now contend that the adoption was valid, that it cannot be attacked here, that the order entered on the previous habeas corpus proceeding is void and that they, as foster parents, are entitled to the custody of the infant.

The defendants say that the attempted adoption is void and a nullity in that it vitally failed to comply with the adoption law.

Section 111 (all references are to the Domestic Relations Law and all emphases are ours) provides that " consent to adoption *shall* be required as follows: * * * 2. Of the parents or surviving parent * * * 4. Of any person * * * having lawful custody of the foster child."

This infant's parents being dead, subdivision 4 applies.

Subdivision 6 of section 109 provides: " ' Lawful custody ' " means " a custody (a) specifically authorized by statute or (b) pursuant to judgment, decree or order of a court or (c) otherwise authorized by law." Neither exists here.

Subdivision 4 of section 112 provides: " Where the foster child is to be adopted upon the consent of some person other than his father or mother, there shall also be presented the affidavit of such person showing how he or she obtained lawful custody of the child."

The papers in the adoption proceedings do contain an affidavit of the paternal grandfather and grandmother stating that " they were awarded by an order of the Surrogate's Court of Chemung County * * * on the 28th day of August, 1939, the custody of Mary Elizabeth Mirich * * *." But this affidavit is erroneous. The records of the Chemung County Surrogate show that the paternal grandparent, Charles Mirich, was on that day appointed general guardian of the *estate*, that is, of the *property*, of said infant and her sister. This appointment was made on the waiver and consent of the maternal grandmother and aunt, which consent expressly reserved " any and all rights to the guardianship of the *person* of said infants."

Not only was the above affidavit erroneous, innocently no doubt, but the infant had no lawful custodian, no guardian of her *person*, who could give the consent required by subdivision 4 of section 111. This, it seems to us, was a vital defect. The infant, being under fourteen, could not consent. She was represented by no lawful custodian who could.

Furthermore, subdivision 7 of section 112 provides that " Where the foster child is less than eighteen years of age, *no order of adoption shall be made* until such child has resided with the foster parents for at least six months unless the judge or surrogate in his discretion shall dispense with such period of residence and shall recite in the order the reason for such action." Here the infant resided with the foster parents only one month and ten days before the adoption order was granted. The order does not dispense with such period of residence or recite any reason therefor. Here again the adoption papers fail to comply with a requirement which the Legislature considered necessary. (*Matter of Cohen*, 155 Misc. 202, 207.) It forbids making the order without such compliance.

" It is a familiar fact that adoption was unknown at common law and that the subject is wholly governed, and strictly limited, by statute. * * * the statutory requirements respecting the tribunals * * * and the methods of *procedure* specified,

for an abrogation [this was an abrogation proceeding], are as essential of strict observance as those which are enumerated respecting an adoption in the first instance. It is a familiar fact that in the latter regard, exact compliance with the statute is invariably deemed imperative." (*Matter of Pierro,* 173 Misc. 123, 124–125.) " The status and rights of adopted children are of purely statutory creation. The adoption of children and strangers to the blood * * * was unknown to the common law of England and exists in the States of the Union solely by force of statutes." (*United States Trust Co.* v. *Hoyt,* 150 App. Div. 621, 624; *Matter of Thorne,* 155 N. Y. 140, 143.)

Our statute provides: " No person *shall* hereafter be adopted except in pursuance of this article." (§ 110.) " In voluntary adoption the following requirements *shall* be observed ". (§ 112.) But in the present case, neither subdivision 4 nor 7 was observed.

Numerous are the cases which hold that the " statute governing adoption must be *strictly* complied with since adoption is a proceeding in derogation of common law," and that the burden of proof is upon the parties asserting the adoption. (*Matter of Marks,* 159 Misc. 348; *Matter of Cohen,* 155 Misc. 202, 205, *supra; Matter of Munch,* 155 Misc. 836; *Matter of Bamber,* 147 Misc. 712, 714; *Murphy* v. *Brooks,* 120 Misc. 704, 706; *Matter of Pierro,* 173 Misc. 123, 125, *supra; Matter of McDeVitt,* 176 App. Div. 418, 422–423, affd. 221 N. Y. 598.)

Do the facts (1) that the paternal grandparents did not have lawful custody of the infant and, therefore, could not meet the requirements of subdivision 4 of section 112, and (2) that there was in fact no legal custodian, and (3) that the infant had not resided with the foster parents for six months, the said period of residence not being dispensed with (§ 112, subd. 7), make the attempted adoption void, a nullity? Are they not jurisdictional? Can the questions be raised otherwise than by direct attack on the adoption? We think so. (*Matter of Livingston,* 151 App. Div. 1, 7, habeas corpus; *People ex rel. Cornelius* v. *Callan,* 69 Misc. 187, habeas corpus; *Matter of Heye,* 149 Misc. 890, probate of will; *Matter of Bamber,* 147 Misc. 712, 714, *supra,* probate of will; *Caruso* v. *Caruso,* 175 Misc. 290; *Matter of O'Keefe,* 164 Misc. 473; *Matter of Marks,* 159 Misc. 348; *Matter of Connelly,* 154 Misc. 672.)

In *Matter of Livingston* (*supra*) the mother had no notice of the adoption. It had been adjudicated that she had abandoned the child. The court held that the question of abandonment was properly raised in habeas corpus.

In *People ex rel. Cornelius* v. *Callan* (*supra*) the infant's father had no notice, it being alleged that he had abandoned the infant. The question was raised and determined on habeas corpus.

In *Matter of O'Keefe* (*supra*) a married man, alleging that he was a widower, had, without the consent of his wife, adopted a child, in violation of section 110. The wife, in the same or another court, applied to vacate the adoption on the ground that it was obtained by *false and misleading statements* in the petition and accompanying papers and that, *therefore, the surrogate did not have jurisdiction* to grant the adoption. The foster parent having a living wife, the court said (p. 476): " * * * *the court was without jurisdiction to grant or confirm the adoption prayed for * * * and the order purporting to grant and confirm the said adoption was null and void* and it should be vacated and set aside as of no force and effect." The order, being without jurisdiction, could be attacked collaterally.

*Matter of Heye* (*supra*) was a proceeding for the probate of the will of an adopted son. It involved the validity of the adoption which in turn involved the validity of his mother's divorce. The questions were determined in the collateral probate proceeding.

In *Caruso* v. *Caruso* (*supra*) the plaintiff received a divorce with custody of a child. She sought the court's consent (in lieu of her husband's consent) to the adoption of the child. This was denied, the court saying (p. 292): " To confer *jurisdiction* on the court in adoption proceedings, consent of the father * * *, must be obtained or the fact of the father's abandonment must be shown." In the present case the consent of a person " having lawful custody " must be obtained. (§ 111, subd. 4.) It was not.

*Matter of Marks* (*supra*) was a direct attack by motion to dismiss the petition for adoption, but the court said (p. 350): " Adoption is a statutory matter and in derogation of the common law. Consequently, the statute must be *strictly* complied with in all its essential parts." Again (p. 349): " To confer *jurisdiction* of the adoption, consent [of the father] must be had or the fact of abandonment must exist."

*Matter of Connelly* (*supra,* p. 673) was an application to vacate an adoption. The purpose of the application was to re-establish the applicant's " status as a statutory distributee of the deceased adopted person ". The adoption was attacked on the ground that the living father had no notice and did not consent. In the present case the required consent of one having

lawful custody was absent.  At page 674 the court said: '' Either the original order of adoption was valid or it was wholly void as without *jurisdiction*.  If the latter, then it was the privilege of any interested party to attack it collaterally, and it would be the duty and obligation of any court in which the question was raised to disregard the order made.  *   *   *   The validity of an adoption may and has been questioned in many ways. The commonest method is by habeas corpus proceedings *   *   *   but it may also be brought on for determination in many other ways, such as an issue of status on the probate of a will.''

We hold that jurisdiction of an adoption proceeding depends not solely on the residence of the parents or foster parents in the county (§ 112, subd. 1), but upon strict compliance with all the requirements of article VII; that at least the failure to meet such requirements renders the adoption a nullity and void.  We also hold that subdivision 4 of section 112 was not complied with; that Charles Mirich and Dora Mirich, whose affidavit was presented in the adoption proceedings, did not obtain or have lawful custody of the infant; that in fact said infant had no lawful custodian; that the said Charles Mirich and Dora Mirich had the infant only for the limited purpose of bringing her up with her infant sister.

We further hold that subdivision 7 of section 112 was not complied with; that the infant had not resided with the foster parents for six months prior to the adoption; that the Surrogate did not dispense with such period of residence and did not recite in the order the reasons for such action.  In the absence of such period of residence, or the dispensation thereof, the statute provides that '' no order of adoption shall be made ''.

The petition for the writ is denied.