In the Matter of DEMOND HILL, Appellant. ALICE McCARLEY, Respondent.

Fourth Department, April 17, 1957.

*Lester Harwood Block* for appellant.

*Frank Pitterman* for respondent.

McCurn, P. J. The petitioner in a habeas corpus proceeding seeks to obtain the custody of his 11-year-old son. The appeal is from an order of the Special Term dismissing the petition and remanding the custody of the child to the respondent.

The infant's mother died at childbirth. The infant at the age of 9 days was brought from the hospital, where he was born, to the home of the respondent, his maternal grandmother, with whom he has ever since resided. He was born on April 5, 1944 and at the time of the hearing was approximately 11 years and 9 months of age. The petitioner, father of the child, lived at the respondent's home for about a month after the child was brought there. Thereafter he lived with his own mother in Buffalo for another month, after which he left the State and located in Newark, New Jersey. He returned to Buffalo in 1946, remarried in 1947 and in 1950 again took up his residence in Newark, New Jersey. He claims that after his remarriage in 1947 he asked the respondent for the custody of the child. The respondent, however, denies this and claims that petitioner's first request to reclaim the child was in October, 1955.

It is to be noted that after petitioner remarried in 1947 he resided with his new wife at the home of her mother in Buffalo until 1950 when he again left for Newark, New Jersey, his wife remaining with her mother in Buffalo until sometime in 1952 when she went to Newark, New Jersey and they established a home there for the first time.

The petitioner's testimony as to the frequency of his visits to his child and his contributions towards his support is vague and in many respects inconsistent. The respondent grandmother testified that during the 11-year period the petitioner visited the child about five times and contributed about four or five hundred dollars towards the child's support. The Justice at Special Term who saw both the petitioner and respondent and heard them testify found as stated in his decision: " During the eleven years that he has resided with his grandmother the child's father, the petitioner herein, has visited him spasmodically and not too frequently. Although the petitioner claims to have contributed regularly toward the support of his son, this Court finds that he has contributed relatively little over the years, as claimed by the respondent. The petitioner claims to have requested his son on previous occasions which the respondent refused, but certain it is he has evinced no active or affirmative interest in gaining custody of him until this present proceeding ". The Special Term concluded that the conduct of the petitioner amounted to an abandonment and that the best interests of the infant would not be served by changing the custody.

While the order appealed from is discretionary in nature certain standards for the guidance of the court in the exercise of its discretion have been frequently stated. Where the controversy is between the parent and a nonparent paramount consideration must be given to the natural right of a parent (*Matter of Livingston*, 151 App. Div. 1, 7; *People ex rel. Portnoy* v. *Strasser*, 303 N. Y. 539, 542). It is equally well established that a parent may lose his inherent right to custody by abandoning that right or by transferring it either expressly or by implication to another (*People ex rel. Kropp* v. *Shepsky*, 305 N. Y. 465, 469). Here, the problem is not the same as in an adoption proceeding where upon adoption a parent loses all of his parental rights for all time. Likewise, this case differs from one where a nonparent is attempting to take away custody presently existing in a parent as in *People ex rel. Portnoy* v. *Strasser* (*supra*). Here, the petitioner delivered custody of the infant to the respondent 11 years ago. He would now sever the long-established relationship and regain custody for himself. The basic questions are: (1) whether the petitioner by his conduct has abandoned his right to custody or has expressly or by implication transferred that right to the respondent grandmother; (2) the welfare of the infant.

For some reason unexplained in the testimony the petitioner departed from the city of Buffalo and took up his residence in

Newark, New Jersey, when his infant son was about 2 months old. The respondent grandmother with whom the infant was left testified that the petitioner left without advising her of his intention or his destination. This, he did not deny at the hearing. His conduct during the 11 years that followed evidenced slight concern for the welfare of the child. Except for meager and irregular contributions of money and clothing he relieved himself entirely of his parental responsibilities and shed them upon the shoulders of the respondent grandmother for the entire period. He thereby displayed a marked indifference to the welfare and upbringing of his child. He cast aside his own responsibility for custody and parental care. The plain inference is that he knowingly and intentionally transferred the right of custody to the grandmother and relinquished his own right thereto (*People ex rel. Kropp* v. *Shepsky,* 305 N. Y. 465, 469, *supra*). Now after a lapse of upwards of 11 years he seeks to recapture his parental right to custody. Consideration should be given not only to his fitness but to the welfare of the child (*Matter of Bistany,* 239 N. Y. 19, 24).

There is no testimony in this record apart from his demonstrated irresponsibility as a parent, that the petitioner is unfit to take custody of his child. However, his past record of indifference and neglect over a period of 11 years points to an irresponsibility equivalent to unfitness to assume the parental obligations which go with custody. Even recognizing the plight with which he was confronted upon the death of his wife at childbirth, it is strange indeed that he would fail to furnish adequate support for his motherless child. The testimony indicates that he was at least as well able to furnish such support as the respondent grandmother. However, despite the fact that he apparently had no other dependents, his contribution of either money or clothing have been so sporadic and infrequent that had it not been for the grandmother the child would have been destitute. Aside from his own testimony that he now desires to make a home for his son and fulfill his parental obligations, there is no indication that he has recently acquired any new qualities of parental fitness. We note that he adopted his present wife's son in August of 1954. That child still remains in the custody of his maternal grandmother and has never lived with the petitioner and his wife. Petitioner's explanation that he intends to take custody of his adopted child as soon as he acquires custody of his own child is not convincing. He commenced this proceeding for custody of his own child more than a year subsequent to the adoption.

The child in question here appears to have been well cared for both in sickness and in health and is well settled and apparently happy in his present environment. We agree with the Special Term that the best interest of the child would not be served by transferring the custody at this time. The Special Term provided that the petitioner might visit the infant at all reasonable times. The petitioner is 29 years of age and the respondent grandmother is 49 years of age. We realize that conditions may change and that there may come a time when based upon changed conditions the petitioner will be entitled to custody of the child. In the meantime, the order appealed from should be affirmed. (See *Matter of Benning* [*Nigro*], 303 N. Y. 775; *Matter of Bush,* 278 App. Div. 743.)

KIMBALL, J. (dissenting). The contest here is between the father and the maternal grandparent of the boy. While the Special Term found in his memorandum '' that the conduct of the petitioner amounted to an abandonment '', the order dismissing the father's writ recites nothing of abandonment by or unfitness of the father but only that the court had been '' satisfied that the best interests of the child dictate that he remain in the custody of the respondent ''. In other words, the Special Term erroneously took the position that the matter might be decided almost solely as a matter of discretion. The majority in this court treat this order appealed from as one '' discretionary in nature.'' The prevailing opinion sets out the basic questions as being two in number, viz: (1) whether the father has abandoned his right to custody and (2) the welfare of the infant. Again, as at Special Term, the fitness or unfitness of the father is not considered to be a '' basic '' question. However, in the second new finding, this court refers to the father's '' irresponsible conduct '' over a period of 11 years and finds that such conduct constitutes unfitness.

We are unable to agree that the matter is essentially one of discretion for the court. In the absence of either an unquestionable and voluntary abandonment of the right to custody or in the absence of proven present unfitness of the father, the area of discretion in the court is extremely limited. It is familiar law that as between parents alone, the child's welfare is the first concern of the court. As between parents and nonparents such rule is not paramount. '' The mother or father has a right to the care and custody of a child, superior to that of all others, unless he or she has abandoned that right or is proved unfit to assume the duties and privileges of parenthood.'' (*People ex rel. Kropp* v. *Shepsky,* 305 N. Y. 465, 468.)

We think that the dismissal of the writ on the ground of abandonment on the father's part cannot be sustained upon the evidence. After the mother's death, the father left the child with the grandmother and went away to work. Thereafter he visited the child. He gave the grandmother money. Later and in the years immediately preceding this proceeding, the boy was with the father in Newark, New Jersey in the summertime. A finding of abandonment, in our opinion, is against the weight of evidence. This court said in *Matter of Bistany* (209 App. Div. 286, 288, affd. 239 N. Y. 19), that there must be " a considerable degree of clearness and certainty in the proof of the renunciation " to find an abandonment. Such clearness and certainty is lacking here.

Nor may the order appealed from be upheld because of the unfitness of the father. There is no proof of unfitness in the record nor did the Special Term find any. The majority opinion states that there is no such testimony, " apart from his demonstrated irresponsibility as a parent ". It may be that this father should have contributed a greater amount of money to the grandmother for the support of the child. It may be that he should have visited the child more frequently, and kept the child with him in Newark for longer periods of time. However, assuming a certain laxness on the father's part in the respects mentioned, certainly that is not proof of present unfitness. Judge FULD, in the *Shepsky* case (*supra,* pp. 470–471) said: " Here, no finding of present or prospective unfitness had been made against the mother. * * * we must recognize, in assessing her fitness for the duties of motherhood, that the courts may not weigh too heavily indiscretions of long ago." If in that case, custody was properly awarded to the unmarried mother of the child, we think in the instant case the inattention of this father at times should be overlooked, in the absence of proof of moral unfitness.

The order should be reversed and custody awarded to the petitioner.

All concur, except VAUGHAN and KIMBALL, JJ., who dissent and vote for reversal and to sustain the writ, in an opinion by KIMBALL, J., in which VAUGHAN, J., concurs. Present — McCURN, P. J., VAUGHAN, KIMBALL, WILLIAMS and BASTOW, JJ.

Order affirmed, without costs of this appeal to either party. New findings of fact made.