In the Matter of CLARENCE CLEAVES, JR., Respondent-Appellant. MARIA V. CLEAVES, Appellant-Respondent.

Third Department, July 3, 1958.

*Sheridan P. Wait* and *Patrick J. Keniry* for appellant-respondent.

*George F. Perkins* for respondent-appellant.

GIBSON, J.   The defendant appeals from an order granted at Special Term, which sustained a writ of habeas corpus and awarded the custody of an infant girl to petitioner, her father. Defendant is the child's stepmother and maternal aunt.   Petitioner appeals from other provisions of the order, including that which grants to defendant certain rights of visitation.

Petitioner was first married to a Belgian national.   Their child, the subject of this proceeding, was born April 14, 1950. In 1953, the wife became seriously ill and her sister, the defendant in this proceeding, left her home in Belgium and came to petitioner's home in Saratoga Springs, where she cared for her sister and the child until the sister's death.   Some months later she and petitioner married.   It is clear that a very close relationship developed between defendant and the child and has persisted.

On June 9, 1956, defendant and the child went to Belgium to visit their mother and grandmother, who was ill.   As appears from petitioner's testimony, he consented to the trip, contributing a small portion of the one-way fare, and, before the departure, arranging with the travel agent through whom the plane tickets had been purchased, to notify him when the return

reservation had been made. At the time he was told that the purchase of the return tickets could be financed by a time-payment plan which he said he would probably use.

Defendant arrived overseas with $20 and, according to her testimony, received during her absence no money and but one letter from her husband, although she wrote him frequently and, among other things, told him that his child was ill. Petitioner said that he wrote two or more letters to her. Meanwhile, the travel agent notified him twice by letters, which he ignored, and once by telephone, that the return reservation was ready and that he could pay for the tickets on a deferred-payment basis. In response to the telephone call, he told the agent that '' they wouldn't be using '' the reservation. Eventually, defendant wrote her husband's grandparents and the grandmother testified that when she showed the letter to petitioner he said he was not going to send for his wife. When the grandmother asked about the child, he said, '' I suppose she will have to come home '', but said nothing as to when or how he would arrange her transportation, although the grandmother said she would let him have the necessary money. Although petitioner testified in rebuttal, he denied none of this testimony. Defendant obtained from her family the cost of transportation and she and the child returned in late August.

Meanwhile, petitioner had terminated a contract with his grandfather for the purchase of the home which petitioner had occupied since April 1, 1953 and on which his payments from that date, of $65 per month (inclusive of taxes and insurance), had been made. He disposed of some of his furniture and rented a furnished apartment in the rear of a garage for $25 per week for the first month and $15 per week thereafter. On defendant's return she met petitioner there. The petitioner said that if defendant was going to live there, he was not, and packed his clothes and departed. This he conceded as he did the fact that the apartment contained but one bed. He made no effort to see his child, despite her long absence from him, then or until nearly a week later, and denied knowledge that when defendant came to his apartment the child was in his grandfather's car on the street outside. Defendant and the child lived in the apartment until it was flooded by storm water and then resided for a short time with petitioner's grandparents until an assistant pastor of the church which she and the child attended helped them to obtain an apartment in a public housing project.

After complaint by defendant to the Children's Court, a hearing was had and an order made directing petitioner to pay

support money and placing the child in defendant's custody. This habeas corpus proceeding was commenced about 11 months later.

The Special Term found that both petitioner and defendant were "persons of good character and, in all respects, capable and willing to care for the child in a proper and wholesome environment" and "in the absence of a showing of unfitness or an abandonment of the rights to custody", on the part of petitioner, sustained the latter's right to custody as against defendant, since she was not a parent. The decision relies principally upon *People ex rel. Kropp* v. *Shepsky* (305 N. Y. 465).

In our view, however, defendant satisfied the requirements of the case cited in that she established by preponderant proof "that the parent is unfit and that the child's welfare compels awarding its custody to the nonparent." (*People ex rel. Kropp* v. *Shepsky, supra,* p. 469.) We are satisfied, further, that petitioner was content to and did abandon his custodial rights, within the meaning of the *Kropp* case (*supra,* p. 468), and did not attempt to reassert them until a time, 11 months after the making of the support order of the Children's Court, when, it may properly be inferred, it seemed financially more expedient to have the child in his custody, and cared for by his sister and, when she was away at work, by her mother-in-law.

The inference of unfitness is strong from petitioner's testimony alone. From the record as a whole it is inescapable. The record speaks, clearly if at times subtly, of a parent neither kind, affectionate, understanding nor unselfish during the years to which the testimony relates. Additionally, his disinterest in the child's religious faith, which was or had been his also, was testified to and not disputed. This proof was countered by the suggestion that other persons, some of them unrelated to petitioner or the child, would see to her church attendance and religious instruction. The uncontradicted testimony as to petitioner's conversation with his grandmother reflects his lack of parental affection or concern as well as his apparent willingness to forego the companionship of his child if he would thereby be rid of an unwanted wife. Perhaps none of the qualities in which petitioner seems lacking would, singly, constitute parental unfitness; in aggregate, their sum cannot be otherwise appraised.

"Fitness" is not established, of course, by proof, such as petitioner offered, of a good employment record and the absence of arrests. Neither, under the authorities, must "unfitness" approach moral turpitude. Within the judicial definition of an unfit parent is included, of course, one who is "a drunkard, an

incompetent, a notoriously immoral person " but the definition comprehends, as well, one " cruel or unkind towards his child " (*Matter of Gustow*, 220 N. Y. 373, 377, quoted in *People ex rel. Kropp* v. *Shepsky, supra,* p. 469) and one whose conduct evinces indifference and irresponsibility (*Matter of Hill* [*McCarley*], 3 A D 2d 424, 427).

Upon our finding that defendant has established not only the petitioner's parental unfitness but his abandonment of his custodial rights as well, we turn to the remaining issue. That the child's welfare would be promoted by the award of custody to defendant is clear. The Special Term's findings are consistent with that conclusion and the proof thereof is so preponderant as to require no discussion.

The order should be reversed, on the law and the facts, the writ dismissed, and custody awarded to defendant, without costs, with right to petitioner to apply to the Special Term for modification of the order to be entered herein to provide reasonable rights of visitation.

BERGAN, J. P., HERLIHY and REYNOLDS, JJ., concur.

Order reversed, on the law and the facts, the writ dismissed, and custody awarded to defendant, without costs, with the right to petitioner to apply to the Special Term for modification of the order to be entered herein to provide reasonable rights of visitation. Settle order.