William J. Regan, S.
This is an adoption proceeding commenced by petitioners to achieve the legal relationship of parents to the child whose custody they now have. The child was voluntarily brought to the petitioners, not for adoption purposes, but for boarding, in the month of March, 1962. In accordance with the father’s promise, several payments for such board and support were made by him and then ceased in June, 1963.
There is very little testimony concerning the natural mother, her whereabouts or her attitude in this matter, but it is very definite that she certainly gave no consent to an adoption. The father advised the petitioners that he had lost his job and said that he was about to go to California where he had a job waiting, and would send money when he began to work.
After a dispute wherein petitioners refused to permit the father to take the child, a habeas corpus proceeding was instituted by him in which he stated that the petitioners wanted to adopt the said infant and refused to relinquish her custody to him. The writ of habeas corpus was denied by Supreme Court Justice Nevins, who awarded custody to the petitioners herein. Following this, and in July, 1963, the father moved to California. No further facts were revealed relating to the mother.
In petitioners’ memorandum many citations are listed with respect to the definition of “ abandonment ” and petitioners show further facts in an attempt to prove the father’s abandonment.
“In a habeas corpus proceeding such as that litigated in the Supreme Court, 1 the question * * * does not depend upon the absolute legal right of the parent to the custody of the child, but the important thing to be determined in any such case is the interest of the child itself. ’ ” (Matter of Cohen, 155 Misc. 202, 205.)
“ The mother refused in the latter part of 1920 to consent to the adoption of her child. The refusal was a warning to the petitioners that there was no intention to abandon, and that custody, if retained, was subject to the parental right. * # * Stress has been laid in argument upon the welfare of the child, her prosperity and happiness. We do not dwell upon such considerations, for they are foreign to the issue. We digress merely to state that nothing in this record gives color to a suspicion *168 that the parents are actuated by any sinister design. If the proceeding were habeas corpus, to determine custody alone, there would be need to consider whether the welfare of the child might be held to be controlling. The petitioners ask for more than custody. They seek to make the child their own.” (Matter of Bistany, 239 N. Y. 19, 23, 24, 249 N. Y. 581.)
Much is made of the fact that it would be for the best interest and welfare of the child that the adoption be granted. 11 While the right of the natural parents to the custody of their children is not a proprietary right in the same sense as if the child were a chattel, and while it is accompanied by a corresponding duty which arises from the relation of parent and child, it has ever been regarded, even in primitive civilization, as one of the highest of natural rights. The -State cannot interfere with this right simply to better the moral and temporal welfare of the child as against an unoffending parent. ” (Matter of Livingston, 151 App. Div. 1, 7.)
In Matter of Marks (159 Misc. 348, 350) the mother of the child had died and the father, by agreement, permitted the aunt to have custody of the child. “ The agreement between the father and the aunt is a custodial agreement creating a practical guardianship for the child. There is in the agreement no evidence of surrender of parental ties * * *. That equities, if any exist, may stand in favor of those seeking adoption is not enough and the courts are reluctant to sever finally the tie between a parent and a child. ’ ’
Section 111 of the Domestic Relations Law, in discussing a usual consent necessary for an adoption, subdivision 4 thereof, states: “Of any person or authorized agency having lawful custody of the foster child. ’ ’ A note following this section states: “that consent is not required of a parent for whose child a guardian was appointed pursuant to section 384 of the Social Welfare Law or where pursuant to judicial finding, the child is a permanently neglected child.” (McKinney’s Cons. Laws of N. Y., Book 14, Domestic Relations Law, § 111.)
As to petitioners’ statement that custody was given them by the father voluntarily, this, of course, is not true, as it was a boarding arrangement. The very fact of the habeas corpus proceeding indicates the father had not abandoned the child but was seeking to have her return.
True it is that the order of Justice Nevins gave custody to the petitioners, but such custody does not ripen into parenthood. It was not by virtue of an abandonment that this custody was granted and there has been no proof of abandonment which would permit this court to dispense with consents of the natural *169 parents. It is the court’s belief that an “ abandonment ” proceeding as such may be brought only under section 384 of the Social Welfare Law.
The court therefore orders that this adoption proceeding be denied. The question of custody, over which the Supreme Court has exercised jurisdiction, of course, is left unaffected.